Kevin RICHTER, Appellant,

v.

STATE of Indiana, Appellee.

No. 76S00–9111–CR–883.

Supreme Court of Indiana.

Sept. 9, 1992.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

Appellant was convicted of two counts of Dealing in Cocaine, Class A felonies, and was declared to be a habitual offender. Appellant was sentenced to a term of thirty (30) years on each count of dealing and each count was enhanced by thirty (30) years by reason of his status as a habitual offender. The sentences were ordered to run concurrently.

During the time the charged offenses allegedly were committed in this case, James Walker was working with several police departments in Indiana and Ohio, including the Auburn, Indiana Police Department and the Indiana State Police. He was working as a professional confidential informant, who was paid a set fee for his services whether or not he was successful in a particular transaction. Thus, we do not have the situation in this case that we have in many cases where a criminal is being used by the police as a confidential informant.

In June of 1989, Walker was working with Lieutenant Craig Baumgardner of the Auburn Police Department and Trooper James Sheffield of the Indiana State Police. Early in July, Walker told the police officers that he had met a man named "Kevin" at a swimming hole south of Angola. During a conversation, Kevin informed Walker that he usually had cocaine but was out of it at that time. (Kevin was later identified as the defendant in this case.) Walker informed Kevin he would like to buy cocaine from him and asked Kevin where he lived. He informed Walker that he lived in Angola across the street from Tom's Donuts. The house was identified by that location and also by the fact that Kevin had told Walker he was driving a blue van and there was a blue van in the driveway at that location. A check of the license plate on the van showed that it was registered to Brenda Lee who lived at that location. The officers then sent Walker to that location to attempt to buy cocaine.

In the presence of police officers, Walker taped a microphone and transmitter to his body. The officers then searched Walker's car and installed a "repeater" for the anticipated transmission from Walker. Walker was given money for the expected buy; however, his person was not searched. After transacting some other drug business including a marijuana buy which was turned over to the officers, Walker went to appellant's home where he arrived at approximately 9:00 p.m. A woman later identified as Brenda Lee told Walker that Kevin was not home but to come back later. At about 9:25, Walker went back to the house, and the officers were able to monitor Walker's conversation with appellant who had arrived home by that time.

Appellant told Walker he did not have any cocaine at that time but that he was waiting for some people to bring him money so he could make a trip to Fort Wayne to get some. A price of "520" for a quarter ounce was agreed upon, but appellant told Walker that he did not know him well enough to buy the drugs from his supplier

before receiving money. A discussion followed between the two as to what arrangement they would make for payment. During this discussion, appellant told Walker he could "ask anybody in Angola who knows me, who knows Kevin Richter, and they'll tell ya what kind of dope I sell. I'm honest."

After additional discussion, Walker paid appellant $520. Appellant then told Walker he would be back with the cocaine in about two hours. During the two-hour wait, Walker went to other locations in Angola pursuing his job as an informant. At approximately 11:30 p.m., with the officers in surveillance, Walker went to appellant's house; however, no one was there. Finally, on July 4 at 2:09 a.m., after several return trips, Walker was admitted by appellant and after a period of time with conversations with the various people in the home, appellant took Walker into a bedroom and told him he was unable to get a "quarter" for him but that he did have an "eight-ball." Appellant told him that the eighth-ounce only cost $275. He then returned $245 change from the $520 Walker had given him earlier. Appellant also handed Walker a plastic bag which contained a white powdery substance. After some additional conversation in which appellant tried to show Walker how to smoke cocaine, Walker left the home at approximately 2:44 a.m. The plastic bag containing the white powder was turned over to the officers. Later chemical analysis showed it to contain 3.2 grams of cocaine.

On July 11, 1989, Walker again met with the police officers, and the same procedures were followed. At approximately 10:30 p.m., Walker went to appellant's home, and again Brenda Lee answered the door. She informed Walker that appellant was in Fort Wayne picking up some cocaine, and if Walker had let them know, he could have placed an order. Walker asked Brenda if it were possible to call appellant at Fort Wayne. She said she would try. Police testified that telephone records verified that a call in fact was placed from that home to Fort Wayne that evening.

While Walker waited outside, a man came to the door and asked Walker if he had money, which he replied that he did. A short time later Brenda reappeared and said that she had talked with appellant and he would bring back an eight-ball. Walker then returned to the house about 12:09 a.m. on July 12; however, appellant was not yet there. When Walker returned at 12:30, appellant had returned home.

Walker was taken immediately to the bedroom where he observed several plastic bags containing white powder sitting on a dresser. Appellant sold Walker an eight ball and charged him $275. Appellant then said he hated to rush Walker out but he had other people coming over. Appellant gave Walker a piece of paper which had the name "Kevin" and a telephone number written on it. The plastic bag which Walker had received from appellant contained a white powder which was tested by the police laboratory and found to contain 3.3 grams of cocaine. This transaction also was monitored by the police.

■ Appellant claims he was denied his constitutional rights by being compelled to appear at his trial in readily identifiable prison clothing. At the time of the trial, appellant was incarcerated at the Westville Correctional Center on unrelated charges. The trial court issued an order to the Department of Correction to return appellant to Steuben County on March 7, 1990 at 9:00 a.m. for his jury trial. The Department delivered appellant at the appointed hour.

After *voir dire* was completed with appellant seated in the courtroom, the jury was sworn and preliminary instructions were given. Counsel for appellant then made a motion for a mistrial out of the presence of the jury on the basis that appellant was dressed in prison clothing and thereby was prejudiced. Counsel stated that the clothing worn by appellant had identification on it indicating that it came from the Westville Correctional Center. However, the judge stated that he could not discern that from the bench, but in any event, had counsel made his objection at the commencement of the trial he certainly would have permitted time for appellant to

change into other clothing. He further stated that to grant a recess to permit the change of clothing at that time might only accentuate the fact that such a change had been made.

Although appellant argues that the jury was closer to appellant than was the judge and might have been able to discern the prison marking on the clothing, there is absolutely no evidence in this record to sustain such an allegation. The record is totally devoid of any indication that the jurors were able to discern appellant was dressed in prison clothing. No valid reason is given by appellant for the delay in making his motion for mistrial until after the jury had been seated and instructed nor is there any indication that it was discernible to anyone in the courtroom, including the jury, that appellant in fact was clothed in prison garb. Appellant has the burden of demonstrating from the record that the trial court in fact did abuse its discretion in denying the motion for mistrial. *Stallings v. State* (1987), Ind., 508 N.E.2d 550. Under the circumstances, we cannot say the trial court abused its discretion in denying the motion for mistrial.

Appellant claims the trial court erred in denying his motion to sever Counts I and II for trial. Such a motion is controlled by Ind.Code § 35–34–1–11(a), which provides: "[T]he defendant shall have a right to a severance of the offenses" if they have been joined "solely on the ground that they are of the same or similar character." In all other cases, the trial court is granted the discretion as to whether severance will be permitted.

Appellant argues that the two counts of dealing in cocaine were joined solely because they were of the same or similar character. However, an examination of the facts in this case discloses that the confidential informant, Walker, was working with the police department on a continuing basis with regard to the surveillance of appellant and presenting him the opportunity to deal in cocaine. This was clearly an on-going investigation over a relatively short period of time concerning appellant's activity as a dealer in narcotics.

It thus falls within this Court's interpretation of the statute in *Chambers v. State* (1989), Ind., 540 N.E.2d 600; *Sweet v. State* (1982), Ind., 439 N.E.2d 1144. Under the circumstances, the trial court had the discretion under the statute to grant or refuse severance. There was no error here.

Appellant contends he was denied his constitutional right to effective assistance of counsel. Appellant's main contention in this regard is that he informed his counsel that at the time the State alleged the transactions took place he was in Columbia, Ohio where he was helping to replace a roof on a house. Appellant states that Columbia, Ohio is between ten and twenty miles from Angola. He presents affidavits from his brother and his mother to this effect. However, the affidavits are not specific and in no way preclude appellant's having made the trip between his home and the roofing project in Columbia, Ohio at the stated times.

In addition, the evidence shows that the transactions between appellant and Walker were monitored by police through the transmitter carried on Walker's person. As noted by the trial judge, "In view of the other evidence in the case, including the tape recordings wherein defendant delivered the illegal drugs, defense counsel would have been ineffective had he elected to use the evidence now propounded by defendant." We heartily agree with the trial judge's observation in this regard. Had trial counsel presented the so-called alibi evidence as requested by appellant he virtually would have destroyed his credibility with the jury. Instead of being evidence of ineffective assistance of counsel, it in fact is evidence of the effectiveness of trial counsel.

Appellant also claims that had his counsel been effective, he would have discovered that the testimony of Walker and the police officers that appellant was driving a blue van as early as the first week in July was false because evidence would show that Brenda Lee did not purchase the blue van until the 19th day of July. In the first place, the blue van did not figure in

the prosecution of appellant other than being one of the identifying factors which Walker and the police used to locate appellant's home. Thus, even if we would assume that the blue van was not in the possession of Brenda Lee at the time indicated, the admission of such evidence would be harmless. *See Gray v. State* (1991), Ind., 579 N.E.2d 605.

■ Appellant further contends the trial court erred in permitting the officers to testify concerning the blue van because their information, which they had received from Walker, was purely hearsay. The trial court ruled that under the *Patterson* rule (*Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482) the testimony of the officers was admissible because Walker was in the courtroom and would be able to testify concerning that fact. Appellant points out that this Court overruled the *Patterson* rule in *Modesitt v. State* (1991), Ind., 578 N.E.2d 649. As acknowledged by appellant, this Court stated that the overruling of *Patterson* would be prospective only. However, appellant argues that to make such a ruling effectively denies him of his right under the theory of *Modesitt.* The *Modesitt* ruling had not been made at the time the trial judge was ruling on appellant's objection in this case. Thus, we decline to give the *Modesitt* ruling retroactive effect to reverse the trial judge on that issue.

■ We would further observe that as we have stated previously, the existence or non-existence of the blue van is collateral to the issues concerning appellant's guilt or innocence in this case. Thus, even if we would apply *Modesitt* and assume the court erred in permitting the officers to testify concerning the blue van, such would not be reversible error. *See Snellgrove v. State* (1991), Ind., 569 N.E.2d 337.

■ Appellant claims the trial court erred in admitting State's Exhibits 1 and 2, claiming that neither of these exhibits was properly connected to him. He bases this argument on the fact the police officers did not search Walker before he entered appellant's home. There is no question that a body search of an informant is recommended before he attempts to make a purchase of narcotics. It also is true that before an exhibit may be placed in evidence the State must establish that the item is connected with the defendant and the commission of the alleged crime. *Malott v. State* (1985), Ind., 485 N.E.2d 879; *Hooper v. State* (1983), Ind., 443 N.E.2d 822.

In many of the cases where police are using a confidential informant, they are using a criminal who has agreed to cooperate with the police in obtaining evidence against other criminals with whom he has associated. In such cases, it is highly recommended that a body search be conducted of the confidential informant. However, in the case at bar, Walker was a professional informant who worked with various police departments for a stated fee. That fee was in no way affected by the success or failure of Walker's efforts. The entire factual situation, including the absence of the body search, was presented fully before the jury. They had every opportunity to evaluate the truthfulness of the witnesses and the weight to be placed thereon. This is especially true in view of the fact the police officers heard by radio transmission the conversations between Walker and appellant. This Court should not impinge the prerogative of the jury and attempt to reweigh those facts. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

■ Appellant contends the evidence in this case is not sufficient to support his conviction for dealing in cocaine. As reviewed above, the evidence in this case concerning appellant's guilt is quite sufficient to support the verdict of the jury.

The trial court is affirmed.

SHEPARD, C.J., DeBRULER and DICKSON, JJ., concur.

KRAHULIK, J., concurs in result without separate opinion.