## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 26 2015, 8:48 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEYS FOR APPELLANT

Scott King
Russell W. Brown, Jr.
Scott King Group
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Titus D. Fields,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

August 26, 2015

Court of Appeals Case No.
20A05-1501-CR-15

Appeal from the Elkhart Circuit Court

The Honorable Terry C. Shewmaker, Judge

Trial Court Cause No.
20C01-1211-FA-74

**Bradford, Judge.**

# Case Summary

[1] In April 2012, Elkhart Police Department, with the help of a confidential informant, conducted two controlled buys of cocaine from Appellant-Defendant Titus Fields. Fields was convicted of two counts of dealing in cocaine and sentenced to an aggregate forty-eight year sentence. On appeal, Fields argues that the trial court erred in not granting his motion to sever the two counts of dealing in cocaine into separate trials. Fields also argues that Appellee-Plaintiff the State of Indiana ("the State") committed prosecutorial misconduct during its closing argument. We affirm.

## Facts and Procedural History

[2] On April 2, 2012, Melissa Sanders, who was working as a confidential informant with the Elkhart Police Department, contacted Fields about purchasing cocaine. Prior to the transaction, Elkhart police searched Sanders and her vehicle, equipped her with an audio recording device, and gave her $120 in marked currency for use in the transaction. Sanders drove to Fields's house where she purchased 3.35 grams of cocaine from Fields for $120. After the purchase was complete, Sanders met with Elkhart police and turned over the cocaine and audio recording device.

[3] On April 12, 2012, Elkhart police set up a second controlled buy between Fields and Sanders. As before, police searched Sanders prior to the transaction and provided her with money for the buy. Per Fields's instructions, Sanders picked up Fields and drove him to his mother's house where Fields was to pick up the drugs. After retrieving something from a car parked at the house, Fields

returned to Sanders's vehicle and gave Sanders 3.06 grams of cocaine in exchange for $120. After dropping Fields off at a different house, Sanders met with Elkhart police and turned over the drugs and recording device. Elkhart police recorded the phone calls setting up both transactions, as well as the transactions themselves.

[4] The State charged Fields with two counts of Class A felony dealing in cocaine. While in custody awaiting trial, Fields made several phone calls to his family from jail, which were recorded. During these calls, Fields admitted that he had prepared the drugs for sale to Sanders, stating that he "had them all bagged up into balls and everything." Tr. p. 475. Also during these calls, Fields encouraged his family to influence Sanders to change her story.

[5] On March 31, 2014, Fields filed a motion to sever the two charges. Following a hearing on the motion, the trial court denied Fields's motion, reasoning that "the two offenses are inextricably intertwined" and involve the same witnesses, the same drug, and were "close in proximity." App. p. 13.

[6] During the State's closing argument, the prosecutor discussed Sanders's credibility as a witness. "We do ask you on behalf of the State to give due consideration to [Sanders] because we think on behalf of the State that she deserve[s] that. She is a tortured person." Tr. p. 502. At this point, defense counsel requested a sidebar and the trial court held an off-the-record discussion with counsels, after which the trial court stated, "There's been an objection registered. [] Neither counsel are supposed to give their own personal opinions.

So to the extent there was an allegation of a personal opinion, you will disregard that, other than that you are the judges of what the evidence has or has not shown." Tr. p. 502. The State went on to make the following argument:

> [T]he State is asking you to believe what [Sanders] has to say. She is a tortured individual who is caught in a horrible situation, and she doesn't know what's going to come out of that situation. There is no evidence to say what's going to happen with her. There's no evidence that she knows what's going to happen to her or that anybody does. She is a tortured person who came in under great duress and testified.

Tr. p. 502.

[7] The jury found Fields guilty on both counts of dealing in cocaine. The trial court sentenced Fields to forty-eight years executed for each count, to be served concurrently.

# Discussion and Decision

[8] On appeal, Fields argues that (1) the trial court erred in denying his motion to sever and (2) the State committed prosecutorial misconduct when the prosecutor provided personal opinion regarding Sanders's credibility as a witness.

# I. Severance

[9] Indiana Code section 35-34-1-9 provides that

> Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:
>
>> (1) are of the same or similar character, even if not part of a single scheme or plan; or
>> (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Indiana Code section 35-34-1-11 provides that

> Whenever two (2) or more offenses have been joined for trial in the same indictment or information *solely on the ground that they are of the same or similar character*, the defendant shall have a right to a severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:
>
>> (1) the number of offenses charged;
>> (2) the complexity of the evidence to be offered; and
>> (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

(Emphasis added). Fields argues that the two offenses were improperly joined solely on the basis that they were of the same or similar character.

[10] The Indiana Supreme Court faced a nearly identical fact pattern in *Richter v. State*, 598 N.E.2d 1060, 1063 (Ind. 1992). In *Richter*, a confidential informant conducted two separate controlled buys in which he purchased cocaine from Richter. *Id*. at 1062. The two buys, which took place one week apart, were both conducted at Richter's home. The Court concluded as follows:

[Richter] argues that the two counts of dealing in cocaine were joined solely because they were of the same or similar character. However, an examination of the facts in this case discloses that the confidential informant, Walker, was working with the police department on a continuing basis with regard to the surveillance of appellant and presenting him the opportunity to deal in cocaine. This was clearly an on-going investigation over a relatively short period of time concerning [Richter]'s activity as a dealer in narcotics. It thus falls within this Court's interpretation of the statute in *Chambers v. State* (1989), Ind., 540 N.E.2d 600; *Sweet v. State* (1982), Ind., 439 N.E.2d 1144. Under the circumstances, the trial court had the discretion under the statute to grant or refuse severance. There was no error here.

*Id*. at 1063.

[11] Here, as in *Richter*, police used a confidential informant to conduct two controlled buys approximately one week apart. Both buys were part of the same on-going investigation over a relatively short period of time concerning Fields's activity as a dealer in narcotics. We see no reasons to distinguish this case from *Richter* and decline to do so. The trial court was within its discretion to deny Fields's motion to sever.

# II. Prosecutorial Misconduct

[12] "In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) 'whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected' otherwise." *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014), *reh'g denied* (quoting

*Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)). To preserve a claim of prosecutorial misconduct on appeal, a defendant must (1) raise a contemporaneous objection, (2) request an admonishment, and (3) if the admonishment is not given or is insufficient to cure the error, then he must request a mistrial. *Washington v. State*, 902 N.E.2d 280, 289-90 (Ind. Ct. App. 2009) (citing *Flowers v. State*, 738 N.E.2d 1051, 1058 (Ind. 2000)). "Failure to request an admonishment or to move for mistrial results in waiver." *Dumas v. State*, 803 N.E.2d 1113, 1117 (Ind. 2004) (citing *Brewer v. State*, 605 N.E.2d 181, 182 (Ind. 1993)).

[13]     Fields properly objected to the alleged misconduct at trial. However, Fields declined to argue that the trial court's admonishment was insufficient and did not request a mistrial. As such, he has waived this issue for review.

> Our standard of review is different where a claim of prosecutorial misconduct has been procedurally defaulted for failure to properly raise the claim in the trial court, that is, waived for failure to preserve the claim of error. The defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible. In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm. The element of such harm is not established by the fact

of ultimate conviction but rather depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled. In evaluating the issue of fundamental error, our task in this case is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible.

*Ryan*, 9 N.E.3d at 667-68. (quotations and citations omitted).

[14] Fields argues that it was improper for the prosecutor to ask the jury "to give due consideration to [Sanders] because we think on behalf of the State that she deserve[s] that. She is a tortured person." Tr. p. 502. Fields argues that this was misconduct because "'the prosecutor is required to confine [his] closing argument to comments based upon evidence presented in the record.' [*Lambert v. State*, 743 N.E.2d 719, 734 (Ind. 2001)], [and] [t]here was no evidence presented during trial that Sanders was 'tortured.'" Appellant's Br. p. 9. However, contrary to this claim, defense counsel made the following remarks during closing statements:

> The prosecutor referred to Melissa Sanders as a tortured individual under great duress in her testimony. I agree completely with the evidence has shown that absolutely. Why is she a tortured individual? Because she delivered on two

occasions cocaine for which she has yet to be prosecuted[1], and she's – she's facing that possibility. She's tortured.

Tr. p. 513. Fields own argument at trial contradicts his argument here.

[15] Even assuming the prosecutor committed misconduct, Fields has failed to show—or even argue—that the alleged errors are so prejudicial to his rights as to have made a fair trial impossible, *i.e.* constituting fundamental error. *Ryan*, 9 N.E.3d at 667. We are unconvinced that the allegedly improper statements had any persuasive effect on the jury, much less an effect which put Fields in a position of "grave peril." Furthermore, any effects that the statements may have had on the jury were wholly inconsequential when compared to the overwhelming evidence against Fields. Aside from Sanders's testimony, that evidence includes audio recordings in which Fields told Sanders that the drugs were ready for her to purchase, testimony from Elkhart officers who arranged and witnessed the transactions from afar, and Fields's own admissions during phone calls made from jail in which he incriminated himself. We find that the trial court did not commit fundamental error in declining to find that the State committed prosecutorial misconduct.

[16] The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.

---

[1] Sanders agreed to become a confidential informant after Elkhart police learned that she had been involved in dealing in cocaine on two prior occasions. (Tr. 270)