**Kevin HOLIFIELD, Vincent E. Hatchett, John Grier, James H. Dunville, Appellants,**

v.

**STATE of Indiana, Appellee.**

**No. 48S00–8607–CR–628.**

Supreme Court of Indiana.

June 3, 1991.

Montague M. Oliver, Jr., Anderson, for Kevin Holifield.

William Byer, Jr., Byer & Gaus, Anderson, for Vincent E. Hatchett.

Jonathan R. Builta, Sansberry, Dickmann, Freeman & Builta, Anderson, for John Grier.

Patrick Murphy, Anderson, for James H. Dunville.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for the State.

GIVAN, Justice.

Although these cases were consolidated for trial, separate appeals were taken with a separate transcript and briefs filed in each case. Nevertheless, this Court has consolidated the cases for the purposes of this opinion.

Appellants each were convicted of Attempted Murder, a Class A felony. Holifield, Hatchett, and Grier each received thirty (30) year sentences to be served consecutively to the sentences they presently were serving with the Indiana Department of Correction. Dunville received a thirty (30) year sentence enhanced by twenty (20) years due to aggravating circumstances and an additional enhancement of thirty (30) years by reason of his status as a habitual offender. Although appellants each have filed separate briefs, the State has consolidated its briefing into a single brief, and this opinion will follow the order of that brief.

The facts are: On November 22, 1984, the victim and the four defendants were imprisoned in the maximum restraint unit of the Indiana State Reformatory. The victim had just arrived at the unit the previous evening. That morning Grier suggested to the victim that he join the others for outdoor recreation, indicating they would play basketball. Shortly after noon, the five men were taken into the outdoor recreational area. All but Dunville engaged in a game of basketball.

During the game, Holifield suddenly grabbed the victim by the neck and Hatchett and Grier began hitting the victim in the face and body. The three men dragged the victim over to where Dunville was standing. At that time, the victim observed that Dunville was holding a knife; the defendants testified that it was the victim who had the knife and that Dunville disarmed him in self-defense. The victim was thrown to the ground and Dunville stepped over him and began to stab him. As the stabbing progressed, the other defendants stepped away.

During the stabbing, the victim was able to kick Dunville in the chest, pushing him away and causing him to drop the knife. When this happened, the other three defendants ran forward and began kicking the victim again. Dunville recovered the knife and returned to the victim, and as the other three stepped back, he again stabbed the victim. When a chest wound began spurting blood, Dunville threw the knife over a fence surrounding the recreational area. One of the defendants was heard to remark, "That's for Resnover," and another said, "I hope that the son of a bitch dies." This episode was witnessed by a guard in a nearby tower who came down from the tower holding a shotgun. When Holifield saw the guard with the gun, he shouted, "Put the shotgun down, bitch. You know you are not going to kill nobody[—I] hope the bitch die."

The victim suffered numerous stab wounds requiring some 50 to 60 stitches as well as permanent impairment of the grip of two fingers on his left hand. The reference to Resnover stemmed from the fact that the defendants knew that the victim had testified against Resnover in his trial for the murder of Indianapolis Police Sergeant Jack Ohrberg.

■ All four appellants, who are black, claim they are entitled to a new trial because the State exercised peremptory challenges against the only three black persons on the jury panel. They also claim other relevant circumstances raise an inference that the prosecutor used the challenges with the intent to exclude persons from the jury on account of their race. We note the law now forbids any race-based exclusion of jurors, regardless of the defendant's race. *Powers v. Ohio* (1991), —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411.

The defendants have made a *prima facie* case of impermissible discrimination in jury selection. They claim that the burden shifted to the State to set forth an explanation of the challenges to demonstrate that they were not racially motivated, citing *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 and *Love v. State* (1988), Ind., 519 N.E.2d 563. Appellants claim this rule is applicable to cases such as the present case which was tried before *Batson* was handed down but pending on appeal at that time, citing *Griffith v. Kentucky* (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 mentioned in *Love, supra.*

■ However, where the record demonstrates racially neutral reasons for the exercise of the challenges, the issue will not lead to reversal. *Stamps v. State* (1987), Ind., 515 N.E.2d 507. Such race-neutral reasons need not rise to the level of a challenge for cause. *Id.; Minniefield v. State* (1989), Ind., 539 N.E.2d 464. When the present cases were filed in this Court, the attorney general perceived that the record was not complete as to any reasons the prosecuting attorney might have had for exercising his peremptory challenges. The attorney general therefore filed a petition with this Court for a remand of the case for such a determination.

This Court, being fully cognizant of the serious impropriety of any racial discrimination or prejudice manifest in the prosecution of a criminal case, granted the State's petition and remanded this case to the trial court to conduct a full hearing where both sides would be afforded the opportunity to examine the facts and motivation behind the peremptory challenges of black prospective jurors. That hearing was conducted and the transcript thereof has been certified to this Court for examination.

At the onset of the hearing, each of the defendants objected to the trial court conducting such a hearing, each taking the position that the State had its opportunity to make an explanation of its peremptory challenges but chose not to do so at the trial. They each claim that it is now too late and that the trial judge erred in conducting such a hearing. The trial judge ruled that he had no choice in the matter, that he had been mandated by this Court's order to conduct such a hearing, and that he intended to do so. The trial judge was correct in his observations and in fact did not have any choice. A question of this nature is extremely serious and must be treated as such by both the State and the defense. It is entirely proper for the entire matter to receive a full hearing.

At the trial, the prosecuting attorney stated that he felt neither side was required to give any explanation of the exercise of a peremptory challenge, that his reasons were not racially motivated, and that he had his reasons for challenging the prospective jurors but did not care to go into those reasons. At the hearing on remand, he testified as to his specific reasons regarding each of the excused black prospective jurors.

■ As to prospective juror Curl, the prosecutor testified that her husband was employed by the telephone company as a repairman whose duties took him inside the walls of the reformatory, that in the discharge of his duties he had become acquainted with reformatory personnel, and

that the prosecutor felt that it would be bad policy to have the wife of a man whose duties regularly took him inside the prison walls passing on the guilt or innocence of inmates.

He testified that Margaret Wills, another prospective juror, was believed by him to be related to a person named Eric Wills, who was suspected in the murder of a prison guard in an unrelated incident, and that the entire Wills family was upset with the Anderson Police Department and its general law-enforcement policies. He further testified that Margaret Wills had been involved in an employment dispute with the prosecutor's son at her place of employment and that she had filed lawsuits against his son. The remaining black person who was challenged peremptorily was Harriett Wills, another member of the disgruntled Wills family, and the prosecutor felt that neither of the Wills women should sit on the jury.

The prosecuting attorney was cross-examined at length by attorneys for each appellant as to how he acquired his information and when it was acquired. He told each that, as a prosecuting attorney for over thirty years, it was his practice when he received the list of prospective jurors to investigate each one as to their fitness to serve as jurors, sometimes with the aid of members of the police department and sometimes based upon his own knowledge. His information on Mrs. Curl came to him through an investigating officer. His information as to the Wills family came to him through his personal knowledge of the situation and reports from officers and from his son who had been engaged in the employment dispute with Margaret Wills.

Following the hearing on remand, the trial court found that in exercising its peremptory challenges the State did so in a non-racially motivated manner, that it had neutral reasons for exercising the peremptory challenges, and that its original ruling upholding the challenges would stand. The record in this case supports the trial court in its findings.

■ Holifield and Grier each contend that the evidence was not sufficient to support the verdict of the jury. This Court has held repeatedly that where there is conflicting evidence, we will not attempt to reweigh that evidence; such is the prerogative of the jury. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670. It is true that the victim testified it was Dunville who had the knife, whereas the appellants testified it was the victim who had the knife and that Dunville took it from him. However, such a conflict was for the jury to resolve.

If we would assume for the sake of argument that the victim in fact did have the knife, there is no conflict in the evidence that after the other appellants had knocked the victim to the ground, Dunville pounced upon him with the knife and repeatedly stabbed him. Even had he wrested the knife from the victim, his need to defend himself by then had disappeared and his attack on the prostrate victim could in no way be justified as self-defense.

The other defendants testified that while Dunville was stabbing the victim they did not participate. However, it is clear it was the others who knocked the victim to the ground facilitating Dunville's attack and that when the victim kicked the knife from Dunville after he had stabbed the victim several times, the others resumed their attack by kicking the prostrate victim repeatedly until Dunville could recover his knife and resume his stabbing. It was only after Dunville apparently felt he had mortally wounded the victim due to blood spouting from his chest that he threw the knife over the fence.

There is ample evidence in this record to support the verdict of the jury that each appellant was guilty of attempted murder. In fact, their references to Resnover immediately following the attack, together with the manner in which the attack was carried out, could have led the jury logically to infer the attack was planned before the appellants ever entered the recreational yard with the victim.

■ Appellants claim the trial court committed reversible error when it refused to receive the testimony of witness Forrester concerning the victim's prior request

for a knife. Appellants' offer to prove was that when the victim first arrived in the maximum restraint unit, he inquired as to how he could acquire a knife indicating that he felt his life was in danger among the other inmates, and further that Forrester would testify that the victim in fact did obtain a knife. The trial court rejected the offer to prove.

As pointed out above, given the circumstances of the State's evidence, it was immaterial whether the victim inquired concerning a knife or whether he obtained a knife. The uncontroverted facts are that Dunville had obtained a knife and repeatedly stabbed the victim after he had been knocked to the ground by the other appellants. Thus Forrester's offered testimony was immaterial.

We further would point out that reformatory inmate William D. Norwood testified at length concerning a conversation with the victim the evening before the attack and how at the victim's request he passed a knife from his cell to the victim's cell. Thus the same fact which would have been testified to by Forrester was testified to in the presence of the jury by Norwood. An appellant is not entitled to a reversal predicated upon exclusion of evidence where other evidence of the same fact is received. *Sherelis v. State* (1986), Ind., 498 N.E.2d 973. We see no error in the exclusion of Forrester's testimony.

Appellant Dunville claims reversible error in that the trial court refused to permit him to *voir dire* prospective jurymen on the matter of self-defense. Dunville's brief does not cite us to the record where any such restriction occurred. However, as pointed out above, the evidence in this case does not warrant an instruction on self-defense; even assuming the trial court did impose such a restriction, it thus would not amount to reversible error.

■ Appellants claim it was reversible error for the trial court to permit Dunville to proceed *pro se*. They contend that inconsistencies between Dunville's opening statement and his testimony during the trial caused him to be discredited, thus reflecting adversely upon all four defen-

dants. Upon Dunville's insistence to represent himself at the onset of the trial, the trial court was careful to caution him on such procedure and after doing so it appointed counsel to sit with Dunville and advise him throughout the trial.

The other defendants were represented by counsel throughout the trial. We cannot say the trial court erred in permitting this procedure. In a trial where several defendants are being tried jointly, reversible error does not occur simply because one defendant gives testimony that incriminates other defendants. *Averhart v. State* (1984), Ind., 470 N.E.2d 666, citing *Baysinger v. State* (1982), Ind.App., 436 N.E.2d 96. Although Dunville's *pro se* representation was inept at times, possibly to the point of self-incrimination, we cannot say it constituted reversible error, especially in view of the uncontradicted evidence supplied by the State.

■ Appellants claim it was error for the trial court to refuse their offer of Exhibit No. 4 on the ground that it was not relevant. The exhibit outlines the security procedure that the Department of Correction adopted to protect the victim. We fail to see how this evidence tends to prove or disprove any of the material facts involved in this case. The trial court did not err in so ruling. *See Cox v. State* (1985), Ind., 475 N.E.2d 664.

■ Appellants contend they each were prejudiced when at the beginning of the trial they were brought into the court environs in the presence of prospective jurors while each was shackled hand and foot. When the objection was made, the trial court investigated the matter and found that the prospective jurors in fact were inadvertently subjected to the sight of the appellants in their shackled condition. However, the trial court pointed out that the evidence in the case would demonstrate conclusively that the defendants were inmates at the reformatory and ruled that no additional prejudice would be presumed by their exposure to the prospective jurors under restraint. The court then proceeded to admonish each of the prospective jurors

that they were in no way to draw any conclusions from what they had seen when the defendants entered the environs of the court.

When it is shown that such exposure, even where erroneous, was harmless beyond a reasonable doubt, it will not result in a reversal. *See Coates v. State* (1986), Ind.App., 487 N.E.2d 167. Clearly, no reversal is warranted in the instant case.

■ Appellants claim the trial court erred in permitting the State to tender twenty-three final instructions. Appellants complain both as to the number of instructions tendered and that those given are repetitious in nature. Even though instructions follow the same theme, if they address different aspects of that theme they do not constitute error. *Battles v. State* (1985), Ind., 486 N.E.2d 535. The trial court is allowed wide discretion in determining whether the repetition in the instructions constitutes undue emphasis. An examination of the instructions given shows that they in fact do address different aspects of the issues the jury was required to decide. We see no error here.

■ Appellants contend it was reversible error for the court to permit the prosecutor to dismiss a conspiracy count which originally had been charged in addition to the attempted murder charge. Indiana Code § 35–34–1–13 permits a prosecuting attorney to dismiss a charge against a defendant. This Court has held that under the statute the trial court has no discretion but to grant a motion to dismiss a charge. *Burdine v. State* (1987), Ind., 515 N.E.2d 1085. We are at a loss to see how any of the appellants could have been harmed by the dismissal of the conspiracy count. We see no error here.

■ Appellants claim the trial court erred in permitting excessive security personnel in the courtroom and that the presence of a large number of uniformed and armed police officers conveyed to the jury that they were an unusual security risk, thus prejudicing their defense. It was, of course, necessary under the circumstances with four defendants who were inmates of a maximum security prison to have various armed guards present.

In addition to the usual necessary guards, there were several new recruits of the Indiana State Police present to observe the trial as a part of their training. The trial court explained this to the jury and cautioned them that they were to attach no significance to the presence of these extra officers. The United States Supreme Court has stated that the presence of armed personnel in a courtroom is not a practice that is inherently prejudicial and must be examined on a case-by-case basis. *Holbrook v. Flynn* (1986), 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525. There is no showing in this record that the presence of armed uniformed officers exceeded the natural expectations of a reasonable person. Under the circumstances, we see no reversible error.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and KRAHULIK, JJ., concur.

DICKSON, J., concurs in result without separate opinion.