Marvin S. HAWKINS, Appellant,

v.

STATE of Indiana, Appellee.

No. 18S02–9312–CR–1379.

Supreme Court of Indiana.

Dec. 14, 1993.

John S. Brumfield, Special Public Defender, Muncie, for appellant.

Pamela Carter, Atty. Gen. of Indiana, Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

ON PETITION TO TRANSFER

DeBRULER, Justice.

Following a jury trial, appellant Marvin S. Hawkins was convicted of Dealing in Cocaine, a class A felony, Ind.Code § 35–48–4–1. The trial court sentenced him to twenty (20) years, plus costs and intervention fees. In a memorandum decision, the Indiana Court of Appeals (Second District) affirmed his conviction. We grant his Petition to Transfer and consider the following issues:

I. Whether the trial court erred in admitting evidence obtained during a warrantless search of appellant Hawkins' home;

II. whether the State used a peremptory challenge to strike a black juror upon the basis of race;

III. whether the trial court erroneously allowed a police officer to testify that she believed, on the basis of her search, that the State's informant did not possess drugs prior to the controlled buy.

I.

The police received information that Paul Salaam, Neal Lander and appellant Hawkins were selling crack cocaine out of appellant Hawkins' residence. On May 8, 1991, the police, utilizing an informant, executed a controlled buy within appellant Hawkins' residence. Prior to the buy, offi-

cers searched the informant for drugs and gave her fifty dollars in cash which the police had previously photocopied. Officers also attached a wire to the informant for the purpose of maintaining electronic surveillance during the drug transaction. However, due to technical difficulties, the wire produced an inaudible signal.

At approximately 10:30 p.m. the same day, Officer Gillum drove the informant to appellant Hawkins' residence while additional officers maintained visual surveillance of the house. The informant entered the house and returned within two or three minutes with a rock-like substance. Officer Gillum met her in his police car, took the informant a safe distance from appellant Hawkins' residence, and field tested the substance. The field test indicated the presence of cocaine. Thereafter, Officer Gillum advised the other officers via police radio that the substance tested positive for cocaine and then he returned to appellant Hawkins' residence.

Officers Neal, Gillum, and Vollmar approached the front door of appellant Hawkins' house. Additional officers waited at the rear door. At approximately 10:57 p.m., Officer Neal knocked on the door. Neal identified himself, and demanded that the door be opened. The officers testified that someone approached the door and asked what they wanted, then withdrew from the doorway. Officer Neal re-identified himself and again demanded that the door be opened. After this subsequent demand, Officer Neal kicked in the door and entered the residence followed by the other officers. Appellant was knocked to the floor by the door as it flew open. Neal testified that he did not remember hearing anyone running inside before forcing open the door. Vollmar testified that he heard no running before the door was forced open. Gillum heard no running but believed the door was forced open because one of the other officers had heard running. Once the officers forcibly entered the premises, they definitely heard the sound of people toward the back of the house. The officers took Salaam, Lander and appellant Hawkins into custody, se-cured the house and conducted a search of the premises. In plain view the officers observed a substantial amount of cocaine, razor blades and shot gun shells placed on a table.

After securing the premises, Officer Gillum met Dave Eiler, an investigator from the prosecutor's office, at the courthouse where they prepared a request for a search warrant. Around midnight, Officer Gillum and Eiler went to Judge Barnet's home, gave testimony, and received a warrant to search appellant Hawkins' residence. The testimony included a description of the cocaine seen after entry was made.

Officer Gillum returned to appellant Hawkins' home with the search warrant shortly after midnight and ordered the officers to conduct a search of the premises. As a result of this search, the officers discovered and seized several firearms, $885 in cash, including $45 of the buy money used by the informant, and a jar of coins.

## II.

At trial, over objection, the court permitted the introduction of all cocaine, cash, paraphernalia, firearms and shells discovered in the house. Appellant Hawkins claimed that the search of his home without a valid search warrant violated his constitutional right to be free from an unreasonable search and seizure, and as a consequence such violation rendered the items seized inadmissible and the court's ruling error.

■ When a search is conducted without a warrant, the State bears the burden of justifying the search by proving that one of the exceptions to the warrant requirement applied. In this case, the State argues that the search was legal because it was necessary to prevent the loss of evidence and the escape of the perpetrators. Appellant Hawkins contends that the State had the opportunity to obtain a valid search warrant prior to forcibly entering his house.

■ Generally, warrantless entry into the home for purposes of arrest or search are prohibited by the Fourth Amendment

of the United States Constitution. *Minnesota v. Olson* (1990), 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85. Article I, § 11 of the Indiana Constitution mirrors the federal protection. Under these constitutional guarantees, a search and seizure must be supported by a judicially issued warrant unless exigent circumstances exist that place the search and seizure within certain narrowly defined exceptions. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732; *Ludlow v. State* (1974), 262 Ind. 266, 314 N.E.2d 750. The burden is on the prosecution to demonstrate exigent circumstances to overcome the presumption of unreasonableness that accompanies all warrantless home entries. *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639.

■ One such exception permits the State to enter a home when government agents believe evidence may be destroyed or removed before a search warrant is obtained. *Sayre v. State* (1984), Ind.App., 471 N.E.2d 708, 714. The police must have an objective and reasonable fear that the evidence is about to be destroyed. *Harless v. State* (1991), Ind.App., 577 N.E.2d 245, 247. Moreover, exigent circumstances cannot be created by police officers to justify warrantless searches. *King v. City of Fort Wayne, Ind.* (1984), N.D.Ind., 590 F.Supp. 414, 422; *State v. Williams* (1993), Ind.App., 615 N.E.2d 487, 488.

■ Officer Gillum testified that crack houses typically have a high volume of customers. Therefore, the police believed that they might lose the "buy money" via subsequent sales transactions. Notwithstanding Officer Gillum's testimony, the record does not support his claim that appellant Hawkins' house was as busy as a "drive-in restaurant." The record shows that only fifteen transactions were executed within the house during the preceding two-week period. During the evening of May 8, 1991, a Wednesday, the police did not observe any additional traffic at the home after the informant left appellant Hawkins' house.

In *Sayre*, the police officers went to the defendant's residence to question her about a theft. One of the investigating officers knocked on the door and announced that he was with the police. At that time, the officer heard someone inside yell "Police!" and the sound of people running. The officer looked through a window and observed people taking away from the kitchen table what appeared to be drug paraphernalia. The court held that the subsequent warrantless search was justified because it was reasonable for the officers to conclude that the destruction of the evidence was about to take place. *Sayre*, 471 N.E.2d at 714. Unlike *Sayre*, the police officers in the present case had no such basis to reasonably conclude that destruction of evidence was imminent.

The officers testified that they heard nothing after Neal knocked on the front door and identified himself, nor did they believe the occupants had any idea that the police were initiating a raid. As officers waited at the door they did not hear people running. It was only after an officer kicked the front door open that people began to run within the house.

■ Courts should not be reticent in enforcing the constitutional rule restricting the search of a person's home without a warrant or consent, and therefore, demand a genuine showing of an emergency before they will excuse the police's failure to obtain a warrant. *United States v. Salgado* (1986), 7th Cir., 807 F.2d 603, 609; *Harless*, 577 N.E.2d at 248. In this case, we believe that the State has made no such showing.

Prior to the warrantless entry, the police properly executed a controlled buy. Officers, stationed in front and behind appellant Hawkins' house, maintained visual surveillance of the premises following the drug purchase. It took a little more than an hour for Officer Gillum to meet with a member of the prosecutor's staff and prepare a probable cause affidavit, travel to Judge Barnet's home, obtain a judicially authorized search warrant, and return to appellant Hawkins' house.

In our view, the State failed to show that they were faced with circumstances making it impractical to wait for a search war-

rant before entering the premises. Consequently, the evidence seized by the officers after the warrantless entry was illegally obtained and it was error to allow its introduction at trial. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *Callender v. State* (1922), 193 Ind. 91, 138 N.E. 817.

A Fourth Amendment error like the one that occurred in this case is subject to constitutional harmless error analysis. Where this Court can state beyond a reasonable doubt that the improperly admitted evidence did not contribute to the verdict, then the error is harmless. *Rabadi v. State* (1989), Ind., 541 N.E.2d 271. Here, we are unable to say beyond a reasonable doubt that the large amount cocaine and ammunition in open view on a table were not utilized by the jury in arriving at its verdict of guilty of dealing in cocaine.

### III.

Appellant Hawkins next contends that the trial court erred in denying his motion for a mistrial based upon the State's use of a peremptory challenge to exclude an African American woman from the jury. He claims that the State purposefully excluded the juror on the basis of her race.

The law is well-established that a defendant is denied equal protection of the law when put on trial before a jury from which members of the defendant's own race have been purposefully excluded. *Strauder v. West Virginia* (1879), 100 U.S. 303, 305, 25 L.Ed. 664; *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69; *Powers v. Ohio* (1991), 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411. To establish a *prima facie* case of purposeful discrimination in the selection of a jury, the defendant must show that he is a member of a cognizable racial group, the prosecutor peremptorily challenged members of the defendant's race, and these facts and other relevant circumstances raise an inference that the prosecutor excluded prospective jurors because of their race. *Batson*, 476 U.S. at 96–98, 106 S.Ct. at 1722–24; *Weekly v. State* (1986), Ind., 496 N.E.2d 29, 31. Once the defendant makes a *prima facie* showing, the burden shifts to the prosecutor to come forward with a neutral explanation for challenging these jurors. *Id.* The explanation need not rise to the level necessary to make a challenge for cause. *Holifield v. State* (1991), Ind., 572 N.E.2d 490, 493.

In this case, Brenda Johnson, an African American juror, testified during *voir dire* that she knew appellant Hawkins and had known the Hawkins family for thirty-five years. At the time of her testimony, Johnson was the only African American member of the jury under immediate consideration. However, additional African Americans remained in the venire.

Although she testified that she was fully capable of impartially judging appellant Hawkins, the State challenged her for cause. The trial court denied the State's challenge, whereupon the State used a peremptory challenge to exclude Johnson. Thereafter, appellant Hawkins unsuccessfully moved for a mistrial arguing that the State's peremptory challenge resulted in purposeful discrimination.

The facts and circumstances of this case do not establish a *prima facie* case of purposeful discrimination. The use of peremptory challenges to exclude African Americans from a jury does not, by itself, raise an inference of purposeful discrimination. *Sutton v. State* (1990), Ind. App., 562 N.E.2d 1310, 1313.

The record shows that at the time the State attempted to exclude Johnson from the jury, other African Americans remained in the venire. The prosecutor articulated Johnson's long standing acquaintance with appellant Hawkins and the Hawkins family as the reason for seeking to exclude Johnson from the jury. Appellant Hawkins fails to show any other facts or circumstances in the record that will support an inference that the State's peremptory challenge was purposefully discriminatory.

The trial court properly denied appellant Hawkins' motion for a mistrial.

## IV.

█ Finally, appellant Hawkins contends that the trial court committed error when it admitted, over defense counsel's objection, testimony by Officer Campbell. In particular, appellant Hawkins contends that because the police failed to perform a body cavity search of the informant prior to the controlled buy, Officer Campbell lacks sufficient personal knowledge on the matter. Therefore, according to appellant Hawkins, the trial court improperly admitted Campbell's opinion testimony. We disagree.

█ It is well settled in Indiana law that a lay witness may express an opinion on numerous subjects if based upon personal knowledge and the proper factual basis for the opinion has been established. *Cockrum v. State* (1968), 250 Ind. 366, 234 N.E.2d 479; *Randolph v. State* (1954), 234 Ind. 57, 122 N.E.2d 860.[1] The determination of whether a witness is qualified to give an opinion is within the trial court's discretion. *Locke v. State* (1984), Ind., 461 N.E.2d 1090, 1093. The extent of a witness' knowledge affects the weight of the testimony and not its admissibility. *Rowan v. State* (1982), Ind., 431 N.E.2d 805.

Officer Campbell performed the search of the informant before she entered appellant Hawkins' house to execute the controlled buy. In her testimony, Officer Campbell described in detail the procedures she utilized while conducting the search. In response to questioning by the State, Officer Campbell stated that she was satisfied that the informant did not possess any drugs before she entered the house.

We are satisfied that Officer Campbell's testimony detailing her search of the informant provided a sufficient factual basis on which she could reasonably form an opinion. Therefore the trial court properly admitted this testimony.

Accordingly, we reverse appellant Hawkins' conviction and remand for action not inconsistent with this opinion.

SHEPARD, C.J., and DICKSON, J., concur.

SULLIVAN, J., concurs in result.

GIVAN, J., dissents with separate opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case in their holding that a warrantless search of the premises was improper.

An unpublished opinion written by Judge Sullivan of the Court of Appeals sets forth the facts as shown by the record. Immediately after a purchase of cocaine had been made at the house in question, the officer went to the door, knocked, identified himself, and asked that the door be opened. He could see a person on the other side of the door with a lit cigarette who asked what was wanted. When the officer re-identified himself and repeated his demand, the cigarette glow disappeared and the officer heard running. It was then that the door was forced open.

At trial, the officer testified that they knew from the informant that crack cocaine was in the house and that the informant had used marked bills in paying for the cocaine purchased. The officer testified that there was going and coming from the house, and he was fearful that the drugs and the marked money would disappear before a warrant could be obtained. This was ample evidence of exigent circumstances from which the trial court could determine that the warrantless search was justified.

However, the majority opinion reweighs this evidence and comes to the opposite conclusion. This is an improper invasion of

---

1. The case law is consistent with the Indiana Rules of Evidence, effective January 1, 1994. Specifically, Rule 701 states:

   If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

the prerogative of the trial court in the weighing of evidence. This Court has repeatedly stated that it is improper for this Court to reweigh evidence on appeal. *Fugate v. State* (1993), Ind., 608 N.E.2d 1370.

I cannot justify reversal of this case. I concur with the manner in which the majority opinion disposes of the other issues.