**Wayne BONNER, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 20A03–9312–CR–411.**

Court of Appeals of Indiana,
Third District.

Oct. 17, 1994.

Michael A. Dvorak, Hahn, Walz, Knepp, Dvorak & Higgins, South Bend, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

## *OPINION*

HOFFMAN, Judge.

Appellant-defendant Wayne Bonner appeals his conviction for dealing in cocaine, a Class A felony. Bonner raises three issues on appeal, all relating to the admission of evidence at his trial:

(1) whether the trial court erred in admitting hearsay evidence by a witness;

(2) whether the trial court erred in admitting testimony which assumed facts not in evidence; and

(3) whether the trial court erred in admitting testimony which called for an opinion or conclusion.

First, Bonner contends that, over his objection, the State was allowed to elicit testimony from police officers regarding statements from confidential informants alleging that Bonner sold illegal drugs. The following excerpt from the trial testimony is illustrative:

"Q. How did you first hear the name Wayne Bonner?

A. Through a piece of intelligence through the Elkhart County Drug—

Q. When you say, 'piece of intelligence,' what are you referring to?

[objection by defense counsel]

A. Pieces of intelligence that I'm referring to are the day-to-day information that comes in from sources.

Q. What information did you have regarding Mr. Bonner?

A. We had information indicating that he was involved in drug trafficking in Elkhart Couny.

Q. When you say, 'drug trafficking,' what do you mean by that?

A. Sale of narcotics.

Q. And did you have any narcotics specifically that he was selling or a variety?

A. Had indicated he was selling cocaine and/or marijuana.

Q. Do you recall when you had that first indication or when the Drug Task Force had that indication?

A. Early 1988.

Q. What, if anything, did you do or any other members do with that information?

A. Basically the information was used to settle different points of surveillance as well as different studies to keep track of and watch the comings and goings of particular people."

Generally, hearsay statements are inadmissible because the admission defeats the defendant's right to confront and cross-examine witnesses. *Williams v. State* (1989), Ind., 544 N.E.2d 161, 162. However, the prohibition against hearsay does not require exclusion of police testimony which contains out-of-court statements by third parties introduced primarily to explain why a particular course of police action was taken. *Id.* The admission of testimony which contains such statements requires a reasonable level of assurance that the testimony was not offered by the proponent nor received by the trier of fact as evidence of the truth of the third party's statement. *Id.* at 162–163.

Thus, the admission of such testimony is not error when accompanied by reasonable assurances. *See id.* The *Williams* court outlined evidence which would provide such assurances:

"In *Johnston,* that assurance was provided in part by an immediate admonition by the trial judge which appropriately limited the jury's use of the testimony. In *Head v. State* (1982), Ind., 443 N.E.2d 44, 59, such assurance was present where the testifying officer described 'an anonymous tip' received by telephone as merely playing a part in the investigation and decision to include the defendant's photograph in an array."

*Id.* at 163.

From a review of the officers' testimony surrounding the statements to which Bonner objects, it is evident that the State elicited the testimony to explain how the officers became involved in their surveillance of Bonner at his place of employment. Moreover, the trial court admonished the jury:

"Ladies and gentlemen, the testimony elicited from Undercover Officer 127 with respect to his statements about the information he received about the Defendant are not to be taken by you as the truth or falsity or anything about those statements whether they were true or not true. They were merely admitted and solely admitted for the purpose of explaining to you why this officer and his co-workers did what they did. You're not to take those statements as being true or false.

And on that basis [the hearsay] objection is overruled...."

\* \* \* \* \* \*

"Okay. Ladies and gentlemen, I'm going to overrule that [hearsay] objection. Once again take that testimony for the purpose of explaining why they took what actions they took, that being he indicated they set up surveillance someplaces."

Here, as set out above, the trial court admonished the jury to use the testimony only as an explanation for the officers' actions. Further, the trial court elicited assurance from the State that the testimony was presented to demonstrate why the officers began surveillance of Bonner. The testimony, when accompanied by the admonishments of the court, clearly meets the test for admission as outlined in *Williams.* *See Craig v. State* (1994), Ind., 630 N.E.2d 207, 210–211; *cf. Sharp v. State* (1989), Ind., 534 N.E.2d 708, 713 (officer's testimony regarding prior drug transactions not ground for error where court admonished jury that testimony constituted background information as to how investigation started, but not relevant to prove commission of crimes charged).

Next, Bonner complains that the prosecutor's use of the word "transactions" to describe the events observed during surveillance of Bonner impermissibly connoted a

"business deal." Thus, according to Bonner the term assumed facts not in evidence and implied the fact at issue, i.e. whether Bonner was dealing cocaine.

Here, the testimony was that the incidents observed were drug transactions. To term them so did not assume facts not in evidence. Further, defense counsel also referred to the incidents observed by the officers as transactions, thus obviating any possible error. Also even when procedural default does not act to preclude assertion of error, such error may nevertheless be found harmless, thus insufficient to require reversal. *Davis v. State* (1992), Ind., 598 N.E.2d 1041, 1048, *cert. den.* —— U.S. ——, 114 S.Ct. 392, 126 L.Ed.2d 340. To say that use of the term interjected by connotation an ultimate conclusion which is reserved for the trier of fact is tenuous at best. *Cf. U.S. v. Allen,* 10 F.3d 405, 414 (7th Cir.1993) (under Federal Rules of Evidence no longer viable objection to complain that witness is offering opinion on an "ultimate issue"). Any possible error in use of the term was harmless inasmuch as Bonner offers no showing of prejudice to his substantial rights.

■ Finally, Bonner argues that the trial court erred in allowing testimony from a police officer that in his opinion, the incidents he observed were drug deals. It is well settled that a lay witness may express an opinion on numerous subjects if based upon personal knowledge and the proper factual basis. *Hawkins v. State* (1993), Ind., 626 N.E.2d 436, 441. The decision as to whether a witness is qualified to give an opinion is within the trial court's discretion. *Id.* The extent of a witness' knowledge affects the weight accorded the testimony, not the admissibility of the testimony. *Id.*

The testimony here was elicited on redirect examination to clarify cross-examination questions regarding the officer's failure to arrest others. The officer explained that he observed people approach Bonner or enter Bonner's vehicle for a short period of time. They appeared to "pass things back and forth." He explained that his approach was to catch the person who appeared to be supplying the drugs. The trial court did not abuse its discretion in allowing the testimony

inasmuch as the officer made personal observations and explained the extent of his knowledge.

The judgment of conviction is affirmed.

Affirmed.

RUCKER, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent. At Bonner's trial on the charge of dealing cocaine, two officers created the impression that they had independent knowledge that Bonner had a propensity to deal drugs and had, in fact, dealt cocaine and marijuana. The source of this "independent knowledge" was not subject to cross examination.

Over Bonner's objection, the State was allowed to elicit testimony from an undercover police officer and Officer William Wargo relating statements from confidential informants alleging that Bonner sold illegal drugs:

Q: What information did you have regarding Mr. Bonner?

A: We had information indicating that he was involved in drug trafficking in Elkhart County.

Q: When you say "drug trafficking," what do you mean by that?

A: Sale of narcotics.

Q: And did you have any narcotics specifically that he was selling or a variety?

A: Had indicated he was selling cocaine and/or marijuana.

Q: Do you recall when you had that first indication or when the Drug Task Force had that indication?

A: Early 1988.

Record, p. 92.

Q: Can you disclose to the jury what information you had prior to the arrest of Wayne Bonner that led you to target Wayne Bonner? . . .

A: The information was that Mr. Bonner was selling cocaine in the area of Industrial Park in Elkhart, Indiana.

Record, pp. 288–89.

Hearsay statements are generally inadmissible because the admission defeats the defendant's right to confront and cross examine witnesses against him. *Williams v. State* (1989), Ind., 544 N.E.2d 161, 162, *reh. denied.* However, the hearsay rule does not require exclusion of police testimony which contains out-of-court statements by third parties introduced primarily to explain why a particular course of police action was taken. *Id.*

The admission of testimony incorporating such third party statements requires a *reasonable* level of assurance that the testimony was not offered by the proponent nor received by the trier of fact as evidence of the truth of the third party's statement. *Id.* at 162–3 (emphasis added).

In *Head v. State* (1982), Ind., 443 N.E.2d 44, our supreme court concluded that an officer was properly allowed to testify that he had received an anonymous telephone tip:

> "When Anderson Police Detective David Levi referred to the 'anonymous tip,' defendant objected to the testimony on the basis that it constituted hearsay. The record reveals, however, that Levi neither revealed the name of the informant nor the contents of the telephone conversation; consequently, the fact that an anonymous tip occurred was not hearsay. *Defendant's objection would have been appropriate had the contents of the telephone conversation been admitted for the truth of the matters asserted therein.*"

*Id.* at 59 (emphasis added).

In *Williams, supra,* a robbery conviction was reversed because the investigating officer had testified: "I received information, in October, from an informant, that an Ernest Williams, a black male, was involved in the robbery of a Village Pantry on the southside of Indianapolis." *Id.* at 163. The court distinguished the testimony from that offered in *Head:*

> "Detective Hilligoss' testimony, while explaining the basis for his decision, was nevertheless hearsay. Unlike the testimony in *Head,* Hilligoss' statement was sufficiently specific and detailed to provide the jury with a basis for making inferences that the informant had knowledge that appellant committed the offense and that appellant was therefore guilty as charged. Appellant, however, was provided with no opportunity to test these inferences through cross-examination."

*Id.* at 163.

In *Newbauer v. State* (1991), Ind.App., 569 N.E.2d 759, *trans. denied,* this court reversed a conviction for possession of marijuana where the arresting officer's testimony disclosed the substance of statements incriminating Newbauer made by a confidential informant not subject to cross-examination.

In sum, officers may testify that they received information from anonymous sources which prompted further investigation. However, a witness may not present specific allegations of the charged activity via "secondhand" testimony, thereby depriving the accused of the right to confront and cross examine his accusers. This is exactly what transpired in the instant case. Bonner has affirmatively demonstrated prejudice to his substantial rights. I would reverse and remand for a new trial.