## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 25 2018, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony Gibson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | July 25, 2018 <br><br> Court of Appeals Case No. 27A04-1712-CR-2745 <br><br> Appeal from the Grant Superior Court <br><br> The Honorable Jeffrey D. Todd, Judge <br><br> Trial Court Cause No. 27D01-1607-F4-31 |

**Crone, Judge.**

# Case Summary

Anthony Gibson appeals his conviction, following a jury trial, for level 4 felony child molesting. He asserts that the admission of certain evidence during trial resulted in fundamental error. He also argues that the trial court abused its discretion in the admission of other evidence and that the effect of the court's cumulative errors deprived him of his right to a fair trial. Finding no fundamental error or abuse of discretion, and concluding that Gibson was not deprived of his right to a fair trial, we affirm.

# Facts and Procedural History

On June 19, 2016, thirteen-year-old K.R. went to her friend C.H.'s house to spend the night. Also at the home that evening were C.H.'s mother, Lindy, her stepfather, Gibson, and five of C.H.'s nine siblings.[1] K.R. had been to C.H.'s home on other occasions and felt comfortable with C.H.'s family.

K.R. and C.H. fell asleep around midnight in the same bed. At approximately 2:30 a.m., K.R. awoke and saw a tall shadowy figure that she recognized as Gibson standing in the doorway of the bedroom. He was wearing a white shirt. K.R. assumed that Gibson was probably just checking on the girls, so she closed her eyes to return to sleep. K.R. heard footsteps coming toward her, but she kept her eyes closed and pretended to be asleep. She could hear deep breathing right next to her, and then she felt a large hand move up her lower thigh, under

---

[1] C.H. has one seven-year-old biological brother. Gibson has three biological children, and he and Lindy had recently adopted five children from foster care.

her shorts, and squeeze her buttocks a few times. K.R. was "shaking, trying not to cry" because she could not "believe it was happening to [her]." Tr. Vol. 2 at 36. She rolled over to her other side, and Gibson removed his hand and left the room.

[4] K.R. stayed under the covers crying and shaking for about ten minutes before she grabbed her cell phone and began texting her mother. K.R. asked her mother to come pick her up immediately, telling her mother that she had awakened to Gibson putting "his hand up [her] pants." State's Ex. 71 at 2. K.R.'s mother told K.R. that she and her fiancé, Dwayne Collins, would come pick K.R. up and stated, "I hope you are telling the truth." *Id*. at 3. K.R. responded, "Please don't make me say anything" and "I didn't see that it was [Gibson] but I felt big hands." *Id*. After her mother said that she was calling the police, K.R. texted, "[B]ut [I don't know] who it was mom! I don't want to get anyone in trouble I just want to go home." *Id*. K.R.'s mother responded, "[I]t's not ok and just promise me you are telling the truth." *Id*. at 4. K.R. said, "I am." *Id*.

[5] After texting with her mom, K.R. eventually woke up C.H. and told her what had happened. K.R. told C.H. that she was leaving, and she asked C.H. to walk her downstairs. C.H. responded that it could not have been Gibson and put the idea in K.R.'s mind that somebody else "had to have came into the house." Tr. Vol. 2 at 52. The two girls walked downstairs and observed Gibson, who appeared to be sleeping in a recliner. K.R. exited the home and walked down the driveway to get picked up. She was still texting with her

mother, and when her mother informed her that Collins was on his way, K.R. stated, "Tell him to hurry please…[I] don't think it was [Gibson]…I feel like someone came in the house…but [ I don't know]." State's Ex. 71 at 5.

[6] Before Collins arrived to pick up K.R., Gibson exited the house and confronted K.R., asking her why she was leaving. Because K.R. did not want Gibson to know that she was awake when he touched her, K.R. said, "I just want go home…I just had a bad dream." Tr. Vol. 2 at 41. When Collins arrived, he approached Gibson and told him that somebody had touched K.R. inappropriately and that he was going to find out who. Gibson did not really respond, but instead just nodded his head. Collins drove away with K.R.

[7] Shortly thereafter, Gibson called 911 and reported that "maybe someone [was] in [his] house." State's Ex. 70. He told the dispatcher that he thought the person had just left because he saw a vehicle parked off a road behind his house and the vehicle was departing as he called 911. A police officer who was nearby and quickly responded to the scene did not see or pass any vehicles as he approached the residence, nor did he observe any vehicles as he continued to search the area. Because Gibson told one of the officers that he thought he saw a man get in the vehicle and drive away, another officer and his canine arrived at the scene and walked that area, but the canine gave no indications or leads for tracking a scent. Also, because Gibson reported that the vehicle was parked in a grassy area, an officer went to the area but saw no evidence of tire tracks or downed grass in the damp ground where Gibson stated the vehicle had been

located. Photographs of Gibson taken that night reveal that he was wearing a white shirt.

After K.R. returned home, she immediately told her sister what had happened. She was subsequently interviewed by police, and on July 7, 2016, the State charged Gibson with level 4 felony child molesting. Following a jury trial, Gibson was found guilty as charged. The trial court imposed a six-year sentence with one year suspended to probation. This appeal ensued.

## Discussion and Decision

## Section 1 – The trial court did not commit fundamental error in admitting certain evidence.

Gibson makes multiple claims of fundamental error. We begin by addressing his assertion that the trial court's admission of repeated vouching testimony from K.R.'s mother, best friend, and sister resulted in fundamental error. Gibson concedes that his counsel failed to object to the testimony as vouching testimony, and the "[f]ailure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error." *Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011) (quotation and citation omitted). Thus, Gibson seeks to avoid waiver and obtain reversal of his conviction pursuant to the doctrine of fundamental error.

Generally speaking, the fundamental error doctrine is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that

otherwise would have been procedurally barred, "not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014). Indeed, our supreme court very recently explained,

> An error is fundamental, and thus reviewable on appeal, if it "made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." These errors create an exception to the general rule that a party's failure to object at trial results in a waiver of the issue on appeal. This exception, however, is "extremely narrow" and encompasses only errors so blatant that the trial judge should have acted independently to correct the situation. At the same time, "if the judge could recognize a viable reason why an effective attorney might not object, the error is not blatant enough to constitute fundamental error."

*Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (citations omitted).

[11] Indiana Evidence Rule 704(b) precludes witnesses from testifying to opinions concerning the truth or falsity of allegations or whether a witness has testified truthfully. Gibson claims that three witnesses improperly vouched for K.R.'s credibility when they were permitted to tell the jury "that they believed" the truth of her allegation against Gibson. Appellant's Br. at 12. Such testimony is considered an invasion of the province of the jurors in determining what weight they should place upon a witness's testimony. *Bean v. State*, 15 N.E.3d 12, 18 (Ind. Ct. App. 2014), *trans. denied*.

[12] First, Gibson contends that impermissible vouching took place during K.R.'s mother's testimony. Specifically, when asked about text messages between mother and daughter in which K.R. stated that Gibson had touched her, K.R.'s mother testified, "I believed her, especially when you see the physical symptoms she was having. You don't have those physical symptoms unless something truly stressful or traumatic has happened to you." Tr. Vol. 1 at 204. Contrary to Gibson's assertion, this comment could be interpreted as limited to K.R.'s mother's belief that an actual molestation occurred, rather than vouching for K.R.'s identification of Gibson as the perpetrator. Regardless, even if K.R.'s mother's testimony was "potentially erroneous under the strict terms of Rule 704," we agree with the State that it did not amount to fundamental error. Appellee's Br. at 13-14.

[13] As noted above, if the trial judge "could recognize a viable reason why an effective attorney might not object, the error is not blatant enough to constitute fundamental error." *Durden*, 99 N.E.3d at 652. Here, we think the trial judge could recognize a viable reason why Gibson's attorney might not object to K.R.'s mother's testimony. Specifically, the entirety of the text message exchange showed that K.R.'s mother clearly questioned the credibility of K.R.'s allegation at the time of the incident (questioning her honesty and twice imploring that she "better be" telling the truth). During vigorous cross-examination, Gibson's counsel was able to emphasize the inconsistency in K.R.'s mother's current testimony regarding K.R.'s credibility at the time of the incident versus the questions as to her credibility expressed in the text messages.

Counsel was further able to highlight that K.R. told her mother multiple times that she did not know for sure who had touched her. K.R.'s mother admitted that she believed that K.R. was also telling the truth when she said she did not know who had touched her. In short, K.R.'s mother's testimony highlighted multiple inconsistencies and gave defense counsel a valuable impeachment opportunity. Accordingly, the lack of objection could have been strategic, and any error in the admission of the testimony is not blatant enough to constitute fundamental error.

[14] Gibson next argues that K.R.'s sister and best friend impermissibly vouched for K.R.'s credibility when the deputy prosecutor asked them for their opinions as to K.R.'s character for truthfulness. When asked about K.R.'s character for "truthfulness and honesty," K.R.'s sister testified that "K.R. has never had a reason to lie, ever" and "out of the three of us [sisters], she's the most honest. Always has been." Tr. Vol. 3 at 42. Similarly, when asked whether K.R. was a "truthful person," her best friend responded, "yes." *Id*. at 91.

[15] The State responds that the testimony was admissible pursuant to Indiana Evidence Rule 608(a) which provides that a witness's credibility may be supported by testimony about the witness's reputation for having a character for truthfulness or by testimony in the form of an opinion about that character. However, "evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." Ind. Evidence Rule 608(a). This is a close call. Unquestionably, it was the State and not Gibson that first introduced evidence that some of K.R.'s prior statements were untrue. Indeed,

it was the State's theory that K.R. made untruthful statements at the time of the incident, but that she was being truthful at trial. So, the State first introduced the untruthful statements and then permitted K.R. to explain her prior uncertainties and why she had been untruthful. On cross-examination, Gibson responded, understandably so, by attacking K.R.'s credibility, emphasizing that lies are still lies, and implying that her current testimony could not be trusted. Under the circumstances, we conclude that while the credibility issue was first interjected by the State, the opinion testimony subsequently solicited by the State was intended to rehabilitate K.R.'s character for truthfulness which had been attacked by Gibson during cross-examination.

[16] We acknowledge that, as a general matter, the State cannot open its own door to inadmissible evidence. *See Willey v. State*, 712 N.E.2d 434, 444 (Ind. 1999) (State cannot bootstrap otherwise inadmissible evidence by introducing it, "forcing a denial, and then claiming it was put in issue by the defendant."). Nevertheless, both parties here relied heavily on K.R.'s prior inconsistent statements to bolster their own theories. In fact, Gibson's counsel foreshadowed his attack on K.R.'s credibility as to her current allegation of Gibson being the perpetrator of the molestation when during opening statement he highlighted her anticipated inconsistent statements. K.R.'s credibility was squarely at issue, and thus we conclude that the challenged testimony was admissible pursuant to Evidence Rule 608(a).

[17] Moreover, even assuming that the opinion testimony of K.R.'s sister and her best friend was inadmissible, we conclude that any error did not rise to the level

of fundamental error. After an extensive review of the trial transcript, we find no clearly blatant violation of basic and elementary principles of due process. The opinion testimony regarding K.R.'s truthful character was incredibly brief and isolated in light of the record as a whole. Consequently, Gibson's substantial rights were not affected by the admission of this testimony, and he has not satisfied the lofty standard for fundamental error.

[18] Gibson also maintains that fundamental error occurred when testimony was admitted regarding K.R.'s changed behavior since the molestation. Specifically, K.R.'s family members, friend, and K.R. herself testified that since the incident, she has become more reserved, does not want to be touched by anyone, and is scared to be alone. Gibson argues that such evidence was "irrelevant," "highly inflammatory," and aimed at invoking "an emotional reaction" from the jury. Appellant's Br. at 17, 20. However, we remind Gibson that even if we were to assume that the evidence was irrelevant and prejudicial, the mere fact that error occurred and that it was prejudicial will not satisfy the fundamental error rule. *Wilson v. State*, 931 N.E.2d 914, 919 (Ind. Ct. App. 2010), *trans. denied*. Rather, a finding of fundamental error "requires a defendant to show greater prejudice than ordinary reversible error." *Id.* (citation omitted). Gibson has simply not done so.

## Section 2 – The trial court did not abuse its discretion in admitting certain evidence.

[19] We next address Gibson's assertion that the trial court abused its discretion in admitting opinion testimony from 911 dispatcher Kelly Fields that the format of

Gibson's call was "a little odd" and "unusual" as compared to other 911 calls. Tr. Vol. 2 at 149. Gibson's counsel objected to the testimony on relevance grounds. The State responded that Fields could give her opinion based on her perception and her experience in taking emergency calls. The trial court overruled Gibson's objection and allowed the testimony. On appeal, in addition to questioning the admissibility of Fields's opinion pursuant to Evidence Rule 401, Gibson claims that any probative value to the evidence was substantially outweighed by the danger of unfair prejudice pursuant to Evidence Rule 403.

[20]    Our supreme court recently explained:

> Trial judges are called trial judges for a reason. The reason is that they conduct trials. Admitting or excluding evidence is what they do. That's why trial judges have discretion in making evidentiary decisions. This discretion means that, in many cases, trial judges have options. They can admit or exclude evidence, and we won't meddle with that decision on appeal. There are good reasons for this. Our instincts are less practiced than those of the trial bench and our sense for the rhythms of a trial less sure. And trial courts are far better at weighing evidence and assessing witness credibility. In sum, our vantage point—in a far corner of the upper deck—does not provide as clear a view.

*Snow v. State*, 77 N.E.3d 173, 177 (Ind. 2017) (citations and quotation marks omitted). Because determinations of relevance and unfair prejudice can often be resolved either way, trial courts have wide discretion in both determinations. *Id*.

[21] "Evidence is relevant when it has 'any tendency' to prove or disprove a consequential fact. *See* Ind. Evidence Rule 401. This 'liberal standard for relevancy' sets a low bar, and the trial court enjoys 'wide discretion' in deciding whether that bar is cleared." *Id*. (citation omitted). Similarly, opinion testimony of a skilled witness, an individual whose knowledge is insufficient to be termed an expert yet is beyond that of an ordinary juror, "generally needs only rise to a relatively low bar in order to be admissible." *Hawkins v. State*, 884 N.E.2d 939, 943-945 (Ind. Ct. App. 2008), *trans. denied*. Pursuant to Indiana Evidence Rule 701, such a witness may provide an opinion or inference that is rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

[22] Here, Fields's vast experience of taking emergency calls supported her testimony as a skilled witness,[2] and her opinion that the format of Gibson's call was unusual was rationally based on her perception and helpful to a clear understanding of her testimony regarding the content of the call and her subsequent response to the call. Any dispute as to the inferences to be drawn from her opinion went to the weight of her testimony rather than to its admissibility, and could be addressed on cross-examination.[3] *Hawkins v. State*, 626 N.E.2d 436, 441 (Ind. 1993); *Lyons v. State*, 976 N.E.2d 137, 142 (Ind. Ct.

---

[2] Gibson does not challenge that Fields was qualified as a skilled witness based on her more than fifteen years of experience as a 911 dispatcher.

[3] Gibson directs us to *Cline v. State*, 726 N.E.2d 1249, 1255 (Ind. 2000), in support of his argument that Fields's testimony was irrelevant, and therefore inadmissible. *Cline* is factually inapposite to the instant case.

App. 2012). Indeed, Gibson's counsel vigorously cross-examined Fields regarding her opinion, offering the jury numerous reasonable explanations for Gibson's behavior during the call. As for prejudice, while we agree with Gibson that Fields's opinion testimony was prejudicial to him in the sense that it may have been damaging to his case, we conclude that it was not unfairly so. Her testimony was brief, and she gave the jury absolutely no indication as to what, if anything, they should infer from her opinion that Gibson's call was unusual. The trial court did not abuse its discretion in admitting the testimony.

## Section 3 – Cumulative error did not deprive Gibson of a fair trial.

Last, Gibson asserts that the combination of all the trial court's evidentiary errors, considered cumulatively, deprived him of a fair trial. Our supreme court has acknowledged "for the sake of argument, that under some circumstances the cumulative effect of trial errors may warrant reversal even if each might be deemed harmless in isolation[.]" *Hubbell v. State*, 754 N.E.2d 884, 895 (Ind. 2001). However, as we concluded above, neither fundamental error nor an abuse of discretion occurred that would support a cumulative error claim. Moreover, a defendant is "entitled to a fair trial, not a perfect trial." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (citation omitted). We perceive no significant breakdown in the adversarial process that deprived Gibson of his right to a fair trial. Accordingly, we affirm his conviction.

[24]   Affirmed.

Bailey, J., and Brown, J., concur.