Randy W. SNELLGROVE, Appellant,

v.

STATE of Indiana, Appellee.

No. 64S00–8804–CR–00374.

Supreme Court of Indiana.

April 1, 1991.

**338**

James V. Tsoutsouris, Public Defender, Joanne Tapocsi–Lohmeyer, Deputy Public Defender, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Following a jury trial appellant, Randy Snellgrove, was convicted on four counts of armed robbery, a Class B felony. Pursuant to an amended sentencing order, the trial court sentenced appellant to fifteen years on each count. The trial court ordered that the sentences on Counts One and Two run concurrent to each other, and that the sentences on Counts Three and Four run concurrent to each other. However, it was ordered that the sentences on Counts One and Two run consecutive to the sentences on Counts Three and Four, resulting in a total term of imprisonment of thirty years.

Appellant now brings this direct appeal in which it is claimed that the following trial court actions constituted error:

1) Admitting evidence obtained from a search of appellant's home;

2) Admitting into evidence appellant's waiver of rights form and oral confession;

3) Admitting a taped statement of the State's witness Tina Harvey in evidence;

4) Refusing to give appellant's instruction Number 2 in its entirety as tendered.

The evidence presented at trial which tends to support the verdict was as follows: Between February 22, 1987, and March 17, 1987, four convenience stores in Porter County were robbed by an armed man. Employees at the different stores all gave a similar description of the gunman's physical traits and of the procedures he followed in carrying out the robberies.

A notice was published offering a one thousand dollar reward for information leading to the arrest and conviction of persons involved in the robberies in that area. On April 12, 1987, Tina Harvey came forward, responding to the notice. Harvey informed the Portage police that she had information concerning the armed robberies that occurred in the area. Detective Ballard met with Harvey in the early morning hours of April 12. Harvey then told Detective Ballard that her husband, James Harvey, had described to her how he had gotten possession of a nine millimeter handgun, and had robbed the Zip Foods store in Porter, while acting as wheel-man. Detective Ballard tape-recorded this initial conversation with Harvey.

Later in the day on April 12, arrangements were made for Harvey to enter appellant's home while wearing a body bug and engage in conversation about the armed robberies in the area. Equipped as planned, she entered appellant's house, and conversed with him. Their conversation was monitored by the police officers outside the home. According to the testimony

of Detective Ballard, who was listening in, appellant said that the "Zip Foods in Porter was one of the first ones they hit." After Harvey left appellant's home, she went by prearrangement to a nearby restaurant, where she met with the police. The events were discussed for about thirty minutes and a decision was then reached by the police that sufficient probable cause existed to make an arrest. They had no arrest or search warrant. The officers left the restaurant, returned to appellant's house, knocked on his door and were let in by appellant's fiancee, Cynthia Hatfield. Appellant and Hatfield were both arrested. Appellant was advised of his right to remain silent and to have counsel. He and Hatfield were then taken to the Portage police station.

At the stationhouse, appellant was again advised of his constitutional rights, and he signed a form acknowledging that he had been advised of his rights and understood them. He then indicated to the officers that he did not want to talk. Appellant was placed in a holding cell while Cynthia Hatfield was questioned in a room above his cell. At the hearing on appellant's motion to suppress certain evidence, appellant testified that through a vent in his cell he could hear his fiancee being interrogated by officers. Lieutenant Detective James Menn, a police officer with the Town of Porter, testified that when he went down to appellant's cell to get a final fingerprint from appellant, appellant asked him if Hatfield was cooperating with the officers upstairs. Detective Menn informed appellant that she was cooperating. A recording of Hatfield's taped statement was then played for appellant. Detective Menn testified that as appellant heard the tape, he began shaking his head and began telling the detectives about his involvement in the robberies.

Appellant asserts that the trial court erred in admitting evidence obtained as a direct result of the electronically monitored conversation between appellant and Tina Harvey which took place in appellant's home on April 12, as such monitoring constituted a violation of appellant's Fourth Amendment rights. In his brief, appellant does not specifically identify what evidence was improperly admitted. In his motion to suppress filed on September 2, 1987, however, appellant identified incriminating statements made on April 12, as evidence that ought not to be admitted because they stemmed from an unlawful seizure that violated appellant's Fourth Amendment rights.

In the present case, we find that there was no Fourth Amendment violation when Tina Harvey entered appellant's home wearing the electronic bugging device, and that such police activity was not illegal. The United States Supreme Court addressed this issue in *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), and held that the Fourth Amendment provides no protection to the wrongdoer who mistakenly believes that a person to whom he voluntarily confides his wrongdoing will not reveal it. Further, in *United States v. White*, 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453, 459 (1971) (citation omitted), the Supreme Court stated:

> If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case.

The Court went on to state that:

> It is thus untenable to consider the activities and reports of the police agent himself, though acting without a warrant, to be a "reasonable" investigative effort and lawful under the Fourth Amendment but to view the same agent with a recorder or transmitter as conducting an "unreasonable" and unconstitutional search and seizure.

*Id.* at 753, 91 S.Ct. at 1127, 28 L.Ed.2d at 459–60.

This Court has followed this approach, rejecting claims that the broadcast and recording of private conversations from a microphone and transmitter carried by a consenting participant in the conversation violates the rights of the other participants

against unreasonable searches and seizures guaranteed by the Fourth Amendment. Citing *White* and *United States v. Hodge,* 549 F.2d 1161, 1167 (7th Cir.1979), this Court held that a defendant's Fourth Amendment rights are not violated when that defendant's conversations are electronically monitored by a government agent with the consent of the informant. *Lawhorn v. State* (1983), Ind., 452 N.E.2d 915, 918–19.

Appellant cites to *Massiah v. State,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), for support of his claim that Tina Harvey's presence in appellant's home and her use of electronic transmitting equipment constituted a Fourth Amendment violation. A review of those cases, however, reveals no support for appellant's position. *Massiah* and *Henry* are cases that involve incriminating statements made by an accused to an undisclosed government informant while in custody and after indictment. Thus, the incriminating statements in those cases were made at "critical stages" of the prosecution at which time the Sixth Amendment right to the assistance of counsel had already attached. The government activities in those cases were prohibited on Sixth Amendment grounds and not on Fourth Amendment grounds.

In fact, the Supreme Court in *Henry* stated that "it is quite a different matter when the government uses undercover agents to obtain incriminating statements from persons not in custody but suspected of criminal activity prior to the time charges are filed." *Henry,* 447 U.S. at 272, 100 S.Ct. at 2188, 65 L.Ed.2d at 123. The Court went on to cite *Hoffa* and *White* stating that the Fourth Amendment offers no protection to the wrongdoer who mistakenly believes that a person to whom he voluntarily confides his wrongdoing will not reveal it. *Id.* Thus, we do not find that appellant's Fourth Amendment rights were violated in the present case.

■ Appellant next asserts that the trial court erred in admitting his signed waiver of rights form and oral confession. Appel-

lant contends that the waiver of rights form and the oral confession were the direct result of an unlawful arrest. Further, appellant maintains that when he signed his waiver of rights form and issued his confession, he was acting under the influence of cocaine and was under duress caused by the arrest of his pregnant girlfriend and thus the signed waiver form and oral confession were not voluntary.

■ Appellant is correct in his assertion that his arrest was carried out in an unlawful manner. Probable cause alone is insufficient to justify a warrantless arrest of a person in his home. Exigent circumstances must also be present. *Myers v. State* (1983), Ind., 454 N.E.2d 861. In *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court stated that "[a] greater burden is placed ... on officials who enter a home or dwelling without consent. Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." *Id.* at 587, 100 S.Ct. at 1380, 63 LEd.2d at 651 (quoting *Dorman v. United States,* 140 U.S. App.D.C. 313, 317, 435 F.2d 385, 389 (1979) (footnote omitted)). Thus, absent exigent circumstances, a warrantless entry of the home is unconstitutional even when a felony had been committed and there is probable cause to believe that incriminating evidence will be found within. *Id.*

Traditionally, exigent circumstances have been found present where: 1) a suspect is fleeing or likely to take flight in order to avoid arrest; 2) incriminating evidence is in jeopardy of being destroyed or removed unless an immediate arrest is made; and 3) in cases that involve hot pursuit or movable vehicles. *Pawloski v. State* (1978), 269 Ind. 350, 355, 380 N.E.2d 1230, 1233. Further, this Court has also recognized an "emergency circumstances" exception for instances "where a violent crime has occurred and entry by police can be justified as a means to prevent further injury or to aid those who have been injured." *Tata v. State* (1986), Ind., 486 N.E.2d 1025, 1028.

■ The validity of a warrantless arrest in a person's home is determined by

analyzing the facts and circumstances of each case. *Id.* The facts and circumstances in this case do not support the police decision to enter appellant's home and make a warrantless arrest. In this instance, police officers did have probable cause at the time of appellant's arrest. Probable cause exists when, at the time of arrest, the arresting officer has knowledge of facts and circumstances which would warrant a person of reasonable caution to believe that the defendant committed the criminal act in question. *Green v. State* (1984), Ind., 461 N.E.2d 108. Here, prior to appellant's arrest, Tina Harvey had told police that appellant and her husband had robbed the Zip Foods in Porter. Further, on the morning of April 12, Detective Ballard presented photographs to a victim of one of the robberies. Out of a group of eight photographs, the victim identified appellant as the armed robber. Finally, Detective Ballard testified that in monitoring appellant's conversation with Tina Harvey, he heard appellant acknowledge that the Zip Foods in Porter was one of the first stores they hit. This evidence provided police with probable cause for appellant's arrest.

■ However, there were no exigent circumstances present in this case to justify the police decision to enter appellant's home and make a warrantless arrest. The State argues that the warrantless arrest was justified in that the police believed appellant was armed and was prepared to flee from the area. Further, the State asserts that while police officers were monitoring Tina Harvey's conversation with appellant, they heard noises associated with drug usage which thus justified the warrantless arrest of appellant.

There is no evidence in the record, however, that supports the State's assertion that appellant was likely to take flight to escape arrest. The State offers no evidence to substantiate this claim that appellant was prepared to flee. As to the drug usage, the police did indeed find drug paraphernalia inside appellant's home upon their entry. Appellant admitted that he had just injected some cocaine immediately prior to his arrest. However, the police did not immediately enter appellant's home at the time they heard these noises that they associated with drug use. Rather, the officers met with Tina Harvey at the Country Lounge for thirty minutes where they discussed whether there was probable cause to make an arrest. From this it can be inferred that the officers did not believe that a crime had occurred such that police entry was required to prevent further injury or to provide aid to someone already injured. Thus, the evidence of drug use going on within appellant's home does not in this set of events constitute an exigent circumstance and it does not fall within the emergency circumstances exception. Because there were no exigent circumstances justifying appellant's warrantless arrest in his home, such arrest was unlawful.

■ Having concluded that appellant's arrest was illegal, it is necessary to consider whether appellant's signed waiver form and oral confession were improperly admitted into evidence as fruits of such illegality. Evidence stemming from an illegal arrest may be excluded upon a proper motion by appellant. *Pawloski*, 269 Ind. 350, 380 N.E.2d 1230. Here, appellant made a timely objection to the admission of his signed waiver form and oral confession. The key question in determining the admissibility of such evidence is

whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963) (quoting Maguire, Evidence of Guilt, 221 (1959)).

Since *Wong Sun,* the Court has identified several factors that are to be considered in determining whether the statements made subsequent to an illegal arrest are an act of free will sufficient to purge the primary taint or are the product of the illegal arrest and thus not admissible. The *Miranda* warnings have been noted to be an important factor in determining whether

the confession was a product of an illegal arrest, but they are not the only factor and the warnings are to be considered along with the other factors. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In addition to the reading of the *Miranda* warnings, the other factors are

> [t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, see *Johnson v. Louisiana*, 406 U.S. 356, 365, 92 S.Ct. 1620, 1626, 32 L.Ed.2d 152 (1972), and, particularly the purpose and the flagrancy of the official misconduct.... See *Wong Sun v. United States*, 371 U.S. at 491, 83 S.Ct. at 419. The voluntariness of the statement is a threshhold requirement.

*Brown*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62, 45 L.Ed.2d at 427 (footnote omitted).

In the present case, appellant was read his *Miranda* warnings three times before confessing. After his arrival at the stationhouse, and after his second advisement of rights, he signed a form acknowledging that he understood his rights and prior to his oral confession, appellant signed a form in which he waived his *Miranda* rights.

Further, the police activity in this instance did not rise to the level of purposeful or flagrant police misconduct. This factor was given particular emphasis by the Supreme Court in *Brown*. At the time of appellant's arrest, Tina Harvey had told the police that appellant was involved in the robberies. A victim of one of the robberies had identified appellant from a photographic display as the person who robbed her store. Detective Ballard testified that in monitoring Tina Harvey's conversations with appellant, he heard appellant state that the Zip Foods in Porter was one of the first ones they hit. Finally, in monitoring these conversations, Detective Ballard testified that he heard noises that he associated with drug use.

Thus, the police clearly had ample probable cause to arrest appellant in this instance. As previously stated, however, the officers were mistaken in their assessment that they could lawfully proceed without obtaining a warrant. There is no evidence that this errant belief constituted a purposeful and flagrant avoidance of judicial oversight of arrest powers or an attempt to force appellant to make a confession against his will.

As to the issue of temporal proximity, appellant made his oral confession approximately four hours after his arrest. Justice Stevens once asserted that the temporal proximity factor may be an ambiguous one. *Dunaway v. New York*, 442 U.S. 200, 220, 99 S.Ct. 2248, 2261–62, 60 L.Ed.2d 824, 841 (1979) (Stevens, J., concurring). Indeed, one legal treatise has gone so far as to state:

> An examination of the lower court cases indicates that in practice the temporal proximity factor has not itself been at all significant as far as influencing a finding that the taint of the illegal arrest was dissipated.

LaFave, Search and Seizure § 11.4(b), at 394 (2d ed. 1987). In *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982), a time span of six hours between the arrest and the confession was found not sufficient to purge the taint. However, in *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), the taint was found to have been purged where appellant's confession followed his arrest by forty-five minutes. These cases exemplify the difficulty of assessing the temporal proximity factor. The four-hour time period following appellant's arrest and preceding his confession carries some small weight, certainly not decisive, tending to dissipate the taint of the illegality, and is considered along with the other factors.

In this case, the record does not disclose the presence of significant intervening circumstances. Intervening circumstances have been found to exist where the arrestee is taken before a magistrate, released from custody, or has consultations with an attorney. LaFave, *supra*, at 398. After his arrest, appellant was taken from his home to the stationhouse in Porter. Appellant was then placed in a holding cell from which he was removed twice for fingerprinting. Shortly after he was removed for

the second time, appellant issued his oral confession.

Balancing these factors, we conclude that appellant's decision to confess was an act of his free will and not the product of his illegal arrest. The absence of any evidence suggesting purposeful police misconduct coupled with the frequent issuance of *Miranda* warnings and the conduct of the police in respecting appellant's initial assertion of his privilege to refuse to answer questions, sufficiently purged the primary taint and thus appellant's waiver of rights form and oral confession were properly admitted.

■ Appellant further maintains that when he signed his waiver of rights form and issued his confession he was acting under the influence of cocaine and was under duress caused by the arrest of his pregnant girlfriend and thus the signed waiver form and oral confession were not voluntary. The State has the burden of proving beyond a reasonable doubt that the confession was voluntary and not induced by violence, threats, promises, or other improper influences so as to overcome the free will of the accused at the time he confessed. *Taylor v. State* (1985), Ind., 479 N.E.2d 1310. On appeal from a determination that the accused's statement was admissible, we do not weigh the evidence nor resolve questions of credibility, but consider the evidence which supports the decision of the trier of fact in the case of contested evidence and any uncontested evidence presented by appellant. *Magley v. State* (1975), 263 Ind. 618, 335 N.E.2d 811. The trial court's finding will be upheld if there is substantial evidence of probative value to support it. *Hill v. State* (1979), 271 Ind. 86, 390 N.E.2d 167.

As previously stated, appellant was read his *Miranda* warnings on three different occasions. In one instance, he signed a form where he acknowledged that he understood his rights. In another instance, he asserted his constitutional privilege and was then placed in a cell rather than pressed to answer questions. Appellant also signed a waiver of rights form prior to his confession wherein he waived his rights.

Appellant contends that his use of cocaine immediately prior to his arrest and his concern over the health of his fiancee, who was pregnant at the time, led him to make an involuntary confession. The testimony as to appellant's physical and mental condition at the time of his confession is in conflict. At the hearing on appellant's motion to suppress, appellant testified that when he signed his waiver of rights form and issued his statement, he was still high on cocaine and unable to think clearly. Appellant also stated that he was upset about the treatment his pregnant fiancee had received. He felt she was being treated in an unduly harsh manner.

However, Detective Ballard and Detective Menn both testified that appellant spoke lucidly in their discussions with him. Detective Ballard stated that he was impressed by appellant's keen memory for detail. Ballard testified that appellant appeared normal and responded clearly to questions. Menn testified that he did not notice any problem with appellant and, based on their conversations, he found him to be an intelligent individual. This evidence was such that from it a rational trier of fact could have concluded to a certainty beyond a reasonable doubt that appellant retained the capacity to make a free and rational choice to confess, and in fact voluntarily did so. The trial court's finding that appellant's confession was voluntary is supported by sufficient substantial evidence.

■ Appellant maintains that the trial court erred in admitting State's Exhibit Number 7, a taped statement of Tina Harvey, when Harvey had no recollection of the conversation thus depriving appellant of his right to cross-examine the witness. Detective Ballard met with Tina Harvey several times beginning with a discussion in the early morning hours of April 12. Ballard tape-recorded three of his conversations with Harvey. At trial, however, Harvey testified that she could not recall any of these conversations as she was engaged in heavy drug use at the time.

The *Patterson* rule allows for the admission of prior statements made by an out-of-court declarant where the declarant is a witness who is present and available for cross-examination regarding the prior statement. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482. This Court has held that when a witness (out-of-court declarant) denies having made the statement in question or denies having any memory of having done so, the statement is inadmissible as substantive evidence as it cannot then be cross-examined. *Lambert v. State* (1989), Ind., 534 N.E.2d 235; *Watkins v. State* (1983), Ind., 446 N.E.2d 949.

In this instance, Tina Harvey's statement to Detective Ballard was improperly admitted under the *Patterson* rule. Harvey consistently stated throughout her testimony that she could not recall any of the conversations she had with Detective Ballard. The closest she came to remembering any of her conversations with Detective Ballard occurred when she was asked about the contents of the taped statement taken on July 14, 1987. When asked about this conversation on direct examination at trial, Harvey intimated that she seemed to recall Detective Ballard asking her about a license plate number. However, Harvey then testified that she did not remember the actual conversation with Detective Ballard, but rather she remembered talking to her mother about the conversation. Harvey went on to state that the only things she could remember from the conversations were what people had told her. Thus, because the witness has no recollection of any of her conversations with Detective Ballard, Exhibit Number 7 was improperly admitted into evidence.

◼ The improper admission of hearsay evidence, however, does not require reversal where, excluding the erroneously admitted hearsay evidence, there remains ample evidence to sustain the conviction. *Altmeyer v. State* (1988), Ind., 519 N.E.2d 138. Here, even without the erroneously admitted hearsay evidence, there was sufficient evidence to sustain appellant's convictions. The jury heard a tape of appellant's statement wherein appellant gave a detailed account of the manner in which he carried out the robberies. Cynthia Hatfield testified that appellant would purchase cocaine with the money he had obtained from the robberies. She further stated that on more than one occasion she observed appellant putting clothes in a shopping bag before he would go out with James Harvey. She testified that he would use these as a change of clothes after robberies. In addition, one of the robbery victims positively identified appellant from a group of eight photographs shown to her by Detective Ballard.

Detective Ballard provided further evidence of appellant's guilt as he recounted the monitored conversation between appellant and Tina Harvey during which he heard appellant inform her that "the Zip Foods in Porter was one of the first they hit." Thus, while Tina Harvey's statement to Detective Ballard was improperly admitted, quality of the other properly admitted evidence of guilt was of such a direct and substantial nature that its improper admission was harmless, that is, it did not impinge upon appellant's substantial rights.

◼ Appellant next asserts that the trial court erred when it read only part of appellant's tendered instruction Number 2. As tendered, appellant's instruction Number 2 read as follows:

A statement or act or omission is "knowingly" made or done, if done voluntarily and intentionally, and not because of mistake or accident or another innocent reason.

In determining whether any statement or act or omission claimed to have been made by a Defendant outside of Court, and after a crime has been committed, was knowingly made or done, the jury should consider the age, sex, training, education, occupation, and physical and mental condition of the Defendant, and his treatment while in custody or under interrogation, as shown by the evidence in this case; and also all other circumstances in evidence surrounding the making of the statement or act or omission.

If the evidence in the case does not convince you beyond a reasonable doubt

that a confession was made voluntarily and intentionally, then you should disregard it entirely. On the other hand, if the evidence in the case does show beyond a reasonable doubt that a confession was in fact voluntarily and intentionally made by a Defendant, you may consider it as evidence in the case against the Defendant who voluntarily and intentionally made the confession.

Appellant states that this instruction was approved as a correct statement of the law in the case of *Grassmyer v. State* (1981), Ind., 429 N.E.2d 248. The trial court, however, gave a modified version of this instruction to the jury as it deleted the entire second paragraph of appellant's tendered instruction.

 The final instruction given to the jury did contain the essential component of appellant's tendered instruction which was that in order for the jury to consider appellant's confession as evidence, the jury had to be convinced beyond a reasonable doubt that the confession was given voluntarily and intentionally. While appellant's language concerning the various factors which could be considered in making a determination on the voluntariness question may have constituted a more complete instruction, such language was not essential and its absence did not seriously compromise the essential purpose of the instruction. Trial courts are not required to follow the exact language of approved instructions, and may use any language from approved instructions that correctly expresses the principles involved. *Beneks v. State* (1935), 208 Ind. 317, 196 N.E. 73. We thus find no error in the giving of this instruction as modified.

Appellant's convictions are therefore affirmed.

SHEPARD, C.J., and GIVAN, DICKSON and KRAHULIK, JJ., concur.