Ernest ESQUERDO, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49S04–9410–CR–931.

Supreme Court of Indiana.

Oct. 4, 1994.

Robert W. Hammerle, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

## ON PETITION TO TRANSFER

DeBRULER, Justice.

Following a bench trial, the Marion County Superior Court convicted appellant Ernest Esquerdo of Possession of Cocaine with the Intent to Deliver, I.C. § 35–48–4–1, a Class A felony; Possession of Cocaine, I.C. § 35–48–4–6, a Class C felony; Possession of Marijuana with the Intent to Deliver, I.C. § 35–48–4–10, a Class D felony; and Possession of Marijuana, I.C. § 35–48–4–11, a class D felony. The trial court merged the two cocaine charges, as well as the two marijuana charges, and sentenced appellant to 20 years imprisonment for the cocaine offenses, and 1½ years for the marijuana charges, to run concurrently. In a memorandum opinion, the Court of Appeals (4th District) affirmed the convictions and sentences. The Court of Appeals denied appellant's Petition for Rehearing. Appellant petitions this Court for transfer of the cause. We grant transfer to address the search and seizure issues that appellant has raised.

## FACTS

The facts supporting the verdict are as follows: A confidential informant advised the Indianapolis Police Department that appellant was selling drugs from his residence at 623 Grande Avenue, Indianapolis, Indiana. On the evening of February 2, 1990, IPD orchestrated a controlled buy from appellant, with the confidential informant posing as the drug buyer. The officers searched the confidential informant, to determine whether the informant was then carrying any illegal narcotics. Finding no drugs, the police outfitted the informant with a Kel-set transmitting device, provided the informant with marked money, and sent the informant into appellant's residence. Narcotics investigators surrounded the perimeter of the house, concealed themselves, and watched all entrances to the residence.

At approximately 10:30 P.M., the confidential informant departed appellant's residence, and signaled to the officers that she had purchased some cocaine. IPD Detective Tom Tudor immediately took possession of the cocaine that was purchased in the controlled buy. The confidential informant advised Tudor that she felt appellant was preparing to leave the residence, because appellant might have detected the presence of the police officers. The informant also stated her belief that appellant might be destroying the evidence or getting ready to leave with the evidence. Based on this information, Detective Tudor, as the officer in charge of the operation, ordered the surveillance units to enter appellant's residence, in order to secure the evidence. Officers Marshall Depew, John Hoenstine, Steven Swarm, Jeff Poikey, and Tudor forced entry, identified themselves as police officers, and secured the residence. They did not have a search warrant.

Inside the residence were appellant, David Hornsby, and Cynthia White. All three were taken into custody as the police conducted a protective sweep of the house. While conducting the protective sweep, the police officers saw a plate with a small amount of white powder placed on a stereo speaker in the living room. The officers believed the powder was cocaine. Also, the officers found a

quantity of what they believed was marijuana on the kitchen table. The officers did not conduct a more extensive search, because they lacked a search warrant. After securing the residence, Officer Swarm wrote a probable cause affidavit, which Officer Tudor signed. Officers Tudor and Hoenstine left the residence to obtain a search warrant, while the other officers remained behind. Appellant, Hornsby, and White were handcuffed and seated on the floor of the living room.

Officers Tudor and Hoenstine returned with a search warrant. The police officers resumed the search of appellant's residence. The police officers located what they believed to be cocaine and marijuana, in various amounts, hidden throughout the house and in a storage shed behind the house. Also, the officers found a triple beam scale and an electronic scale in dresser drawers in the bedroom.

Before trial, appellant moved to suppress the evidence found in his residence following the warrantless entry, as well as the evidence gathered pursuant to the later issued search warrant. The trial court denied the motion. At trial, the prosecution introduced into evidence 27.5831 grams of cocaine, purchased during the controlled buy. The prosecution also introduced the following items into evidence, over appellant's objection: .1793 grams of cocaine found on the stereo speaker in the living room; 61.9002 grams of cocaine found in dresser drawers in one of the bedrooms; 3.2731 grams of cocaine found hidden in a gun rack; 111.1 grams of marijuana found in the kitchen freezer and on the kitchen table; 219.78 grams of marijuana found in a brown paper bag in a storage shed behind the house; 905.65 grams of marijuana found in dresser drawers in one of the bedrooms; photographs of the areas where the officers found cocaine and marijuana; and photographs of the two scales.

## ISSUES

Appellant raises two issues for this Court's consideration:

1) whether the trial court erred in denying Esquerdo's Motion to Suppress the cocaine and marijuana seized before the warrant was obtained, as they were the fruits of a forced warrantless entry, where no exigency was shown to exist; and

2) whether the trial court erred in denying Esquerdo's Motion to Suppress as it related to contraband seized pursuant to the search warrant, as the warrant was the product of the poisoned fruits of the forced, warrantless entry.

### I. The Initial Entry

■■■ The Fourth Amendment to the United States Constitution and Article I, § 11 of the Indiana Constitution protect citizens from state intrusions into their homes. The Fourth Amendment reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Article I, § 11 of the Indiana Constitution mirrors the Fourth Amendment to the U.S. Constitution.[1] These provisions prohibit warrantless entries into the home for purposes of arrest or search. *Hawkins v. State* (1993), Ind., 626 N.E.2d 436. "Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." *Snellgrove v. State* (1991), Ind., 569 N.E.2d 337, 340. Under these constitutional guarantees, a judicially-issued warrant must support any search of a person's residence.

■■■ However, as this Court previously noted, "on occasion the public interest de-

1. Article I, § 11 of the Indiana Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be

violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

mands greater flexibility than is offered by the constitutional mandate ..." of the warrant requirement. *Rabadi v. State* (1989), Ind., 541 N.E.2d 271, 274. Although the warrant requirement is the rule, exceptions to it exist. When a search is conducted without a warrant, as it was in this case, the State bears the burden of justifying the search by proving that one of the exceptions to the warrant requirement applied to overcome the presumption of unreasonableness that accompanies all warrantless home entries. *Hawkins,* 626 N.E.2d 436. The State's burden at the trial or suppression hearing was to demonstrate that the warrantless search fell into one of the recognized exceptions to the warrant requirement.

■ The State sought to show that the police officers conducted the warrantless entry and seizure to prevent the destruction of evidence in the house. This is a recognized exception. Pursuant to this exception:

> Exigent circumstances justifying a warrantless search exist where the police have an objective and reasonable fear that the evidence is about to be destroyed; the arresting officers must have a reasonable belief that there are people within the premises who are destroying or about to destroy the evidence. In such a case, the evidence's nature must be evanescent and the officers must fear its imminent destruction. The fact that narcotics are involved does not, standing alone, amount to exigent circumstances justifying a warrantless search or arrest.

*Harless v. State* (1991), Ind.App., 577 N.E.2d 245, 248 (citations omitted). The State was required to show evidence that the police had an objective and reasonable fear that the evidence was about to be destroyed. *Hawkins,* 626 N.E.2d at 439. Federal law requires this showing to be made by clear and convincing evidence. The trial court found that the State satisfied its burden under this exception. On appeal, we review the trial court's selection of the applicable legal standard under a de novo standard, but review its factual findings under the clearly erroneous standard. *U.S. v. Tartaglia,* 864 F.2d 837 (D.C.Cir.1989). We turn to the particular facts of the present case to determine whether the warrantless entry and search of appellant's residence, made pursuant to this exception to the search warrant requirement, was valid.

■ The police officers testified that their belief rested upon certain "beliefs" the confidential informant gave to the officers: that appellant was "paranoid"; that appellant "may have seen" the police officers outside the residence at the time of the controlled buy; and that appellant "might be destroying or getting ready to leave with the evidence." One officer opined that the ability of the units to conceal themselves had been limited and that they therefore "might" have been observed by parties in the house. The State introduced no other facts at trial as rationale to support the warrantless entry into appellant's residence.

This Court is left to determine whether the evidence was sufficient to warrant the trial court's conclusion by clear and convincing evidence that the circumstances were such as to have induced in the police officers an objective and reasonable fear that appellant was about to destroy evidence, and thus justifying their quick action and the warrantless intrusion. In reviewing the facts, we note that at the time of their decision to move without a warrant, the police officers already possessed the cocaine purchased during the controlled buy. However the police did not know from the informant that additional drugs were present in the house. What items the police officers believed to be threatened with destruction is not specified in the evidence. The fact that the confidential informant did not specifically identify or affirm that evidence was being destroyed is telling.[2] The State presented no evidence that appellant suspected the confidential in-

---

2. See *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In *Aguilar,* the U.S. Supreme Court held that mere affirmance of belief, absent any statement of adequate supporting facts, is not enough to establish probable cause, and thus insufficient to support the is-

suance of a search warrant. *Id.* at 114–15, 84 S.Ct. at 1513–14, 12 L.Ed.2d at 728–29. If these beliefs are not grounds for the issuance of a warrant, they certainly cannot be grounds for a warrantless entry.

formant was acting as an undercover agent. The only direct evidence presented that appellant was worried about the police outside was the hearsay testimony of Officer Tudor, relating that the confidential informant told Tudor that she believed appellant had seen the police officers. *Compare U.S. v. Moore*, 790 F.2d 13 (1st Cir.1986) (objective factors existed to enable investigating officers to conclude that exigent circumstances existed). The confidential informant gave no indication that appellant perceived that the money used in the controlled buy was marked and needed to destroy it in the face of an investigation. This sale went off without a hitch.

The house and its entrance were under constant surveillance by police officers. The possibility that appellant could flee to escape detention did not exist, because the residence was surrounded. Surveillance of appellant's house during the controlled buy did not indicate a high volume of persons coming and going. There was no possibility that the marked buy money would become dispersed among appellant's acquaintances before a warrant could be obtained.

The rationale for the clearly defined exception to the warrant requirement in cases of destruction of evidence is based on the need for quick action, because the evidence is actually in the process of being destroyed or is about to be destroyed. *Ludlow v. State* (1974), 262 Ind. 266, 314 N.E.2d 750. We see insufficient evidence of actual or impending destruction of evidence. What the State asks here would result in an extension of the exception far beyond the bounds of its rationale. The reality of this situation was that there could be no danger of loss of the marked money until someone tried to leave the house. The money and any other drugs were bottled up in the house, and there is little reason to believe that its occupants were alerted to the existence of the undercover operation. The police officers could have and should have sought a search warrant before entering appellant's residence. The evidence presented to the trial court was not sufficient to support its constitutional finding that the police officers held an objective and reasonable fear of loss of buy money and other possible evidence of drug dealing.

The items of evidence which were the direct products of such entry should have been suppressed. *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

## II. Search Pursuant to the Warrant Obtained After the Warrantless Entry

██ Appellant also raises the issue of whether the trial court erred in denying appellant's Motion to Suppress as it related to items seized pursuant to a search warrant. A judge issued the warrant after the police had initially entered appellant's residence and conducted a preliminary search. Appellant argues that the warrant was the product of the forced, warrantless entry. The State counters that sufficient independent probable cause existed to justify the issuance of the search warrant.

After the warrantless entry, the police officers conducted a protective sweep of appellant's residence. While conducting the sweep, the officers encountered, in plain view, small quantities of cocaine and marijuana. After this cursory search, Officer Swarm wrote a probable cause affidavit, in order to obtain a judicially-approved search warrant. The probable cause affidavit, omitting the mere formal parts, read:

The confidential informant went up to the residence at 623 N. Grande, and was let inside the residence by Ernest Esquerdo h/m. Inside the residence Ernest Esquerdo sold to the informant a quantity of cocaine. The transaction was monitored and recorded. During the entire transaction the residence was kept under constant surveillance and no person other than the [confidential informant] entered or exited the residence.... Entry to secure the residence was made into the residence at that time by assisting narcotic detectives due to the fact the [confidential informant] stated that Esquerdo was possibly leaving and because this affiant thougt [sic] that Esquerdo observed the assisting detectives and might be destroying or leaving with the evidence.

Upon entering the residence Det. Tudor and assisting detectives found a Ernest Esquerdo h/m, Cynthia White w/f, David

Hornsby w/m inside the residence with both suspected cocaine and marijuana in plain view in the living room and kitchen area. Also recovered was the money used in the cocaine transaction.

Officers Tudor and Hoenstine went to a local judge to obtain a search warrant. They later returned with a warrant, and conducted a thorough search of appellant's residence. The police discovered large quantities of cocaine and marijuana on the premises.

 The state and federal constitutions guarantee that a court will not issue a search warrant without probable cause. U.S. CONST. amend IV; IND. CONST. Article 1, § 11. Probable cause to search premises is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime. *Utley v. State* (1992), Ind, 589 N.E.2d 232. The decision to issue the warrant should be based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom. *Id.* When seeking either a search or an arrest warrant, the police must follow the warrant statute, I.C. § 35–33–5–2 (West supp. 1994), which specifies the minimum information necessary to establish probable cause.[3]

The State contends that evidence of the controlled buy established probable cause to search appellant's residence. The police officers possessed evidence of the commission of a felony, dealing cocaine. The hearsay testimony of an eyewitness, the confidential informant, could have justified the issuance of the warrant. In fact, the police officers did rely on this evidence when seeking the judicial warrant. Based on the information presented in the affidavit, it was reasonable for the judge to have found probable cause to issue the search warrant. However, in the probable cause affidavit, the officers also disclosed to the issuing judge the existence of evidence that was discovered in the warrantless search of appellant's premises. As we have already held above, this warrantless entry and search were improper, and the evidence

gathered in this search was impermissible at trial. Appellant argues that presentation of this evidence to the judge tainted the warrant, making the warrant a fruit of the poisonous tree. The question before us is whether evidence, obtained illegally and presented as evidence of probable cause, can taint a probable cause determination, and thus invalidate a search warrant.

The case at bar is substantially similar to *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). In *Segura*, federal agents entered Segura's apartment without a search warrant and arrested Segura. The agents conducted a limited security check of the apartment to ensure that no one else was there who might pose a threat to safety or destroy evidence. While conducting this check, the agents observed numerous items related to drug trafficking. The federal agents subsequently obtained a search warrant, and conducted a thorough search pursuant to the warrant. The agents discovered cocaine, cash, and records of narcotics transactions. At trial, the initial, warrantless search was held illegal. However, the court admitted the evidence discovered during the warrant-authorized search, over Segura's objection. Segura argued that the drugs seized under the warrant were "fruits of the poisonous tree."

In *Segura*, the question for the Supreme Court was whether the challenged evidence, which had been obtained pursuant to the search warrant, was uncovered by exploitation of the initial illegality (the warrantless entry and search), or instead by another means, sufficiently distinguishable from the bad actions to be purged of the primary taint. The Supreme Court affirmed the judgment, allowing use of this evidence, holding that the search was made pursuant to a properly issued warrant. The Court noted:

> None of the information on which the warrant was secured was derived from or related in any way to the initial entry into [Segura's] apartment; the information came from sources wholly unconnected with the entry and was known to the

---

**3.** The warrant statute allows the use of hearsay statements to support a finding of probable cause. I.C. § 35–33–5–2(b) (West supp. 1994).

agents well before the initial entry. No information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant.

*Segura,* 468 U.S. at 814, 104 S.Ct. at 3390, 82 L.Ed.2d at 614. In *Segura,* the federal agents had an independent source of probable cause for the warrant under which the evidence was seized, and did not rely upon any evidence gathered during the initial illegal entry to secure the warrant. The federal agents' illegal entry upon private premises did not require suppression of evidence subsequently discovered at those premises when executing a search warrant obtained on the basis of information wholly unconnected with the initial entry.

In the present case, the police officers did rely upon evidence gathered during the warrantless entry to secure the warrant. In the probable cause affidavit, the officers made known to the issuing judge that they had gathered small amounts of cocaine and marijuana during the warrantless entry, an entry we have held to be in violation of the Fourth Amendment and Article I, § 11 of the Indiana Constitution. We recognize that the issuing judge did rely upon this information when issuing the warrant, as the face of the warrant allowed the officers to search specifically for both cocaine and marijuana. The officers learned of the presence of the marijuana only after entering appellant's residence and conducting the warrantless search. The confidential informant did not reveal the existence of marijuana to the police at any time.

We believe that the police officers' misconduct lead directly to the discovery of evidence that was crucial to the State's case against appellant. The officers entered and conducted an initial search of appellant's premises without a search warrant. No circumstances existed to justify a warrantless entry, and the State could not prove that the police's actions fit within an exception to the warrant requirement. The police discovered cocaine, marijuana, and paraphernalia during that search. Later, the officers sought judicial approval to search appellant's home. To convince the magistrate to issue a warrant, the officers submitted an affidavit that informed the judge about evidence the police would not have had, but for the illegal entry. To allow use of the bad evidence would give the police incentive to enter the a residence, without a judicially-issued warrant, and search for evidence to bolster any evidence supporting probable cause that the police already possess. This is plainly what the constitutional protections against unreasonable searches restrict against.

### III. Harmless Constitutional Error

 A Fourth Amendment error like the one that occurred in this case is subject to constitutional harmless error analysis. *Hawkins,* 626 N.E.2d 436. Where this Court can state beyond a reasonable doubt that the improperly admitted evidence did not contribute to the verdict, then the error is harmless. *Rabadi,* 541 N.E.2d 271. Here, the approximately twenty-eight grams of cocaine from the controlled buy was admitted, along with the cocaine, marijuana, and paraphernalia improperly seized. However, the confidential informant did not testify at trial, and there was no direct testimony of a drug sale. The money used in the controlled drug buy was not introduced into evidence. Appellant was not charged with dealing cocaine. Instead, the only crimes the State charged were crimes of possession. The only evidence of possession was evidence gathered during the illegal entry and following the search pursuant to the improperly-issued warrant. The twenty-eight grams of cocaine were not in appellant's possession when he was arrested, nor was there any direct testimony that the cocaine was obtained from him. The evidence obtained after the initial warrantless entry and pursuant to the tainted warrant was the only evidence of appellant's possession, and induced the convictions. Therefore, we cannot say that the admission was harmless beyond a reasonable doubt.

### CONCLUSION

We hold that the evidence discovered pursuant to the warrantless search and seizure were inadmissible. We also hold that the evidence gathered pursuant to the improperly issued search warrant was inadmissible.

We reverse appellant's convictions and remand this cause to the trial court for further proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

GIVAN, J., dissents with separate opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion. The recitation of facts found in the majority opinion and the cases cited therein indicates the majority has engaged in strained rationalization to overturn both the trial court and the Court of Appeals.

I cannot agree with the majority opinion's statement that there are no facts in the record to support the trial judge's decision. To arrive at this decision, the majority appears to hold that the officers had no right to rely on the word of the informant as to what transpired inside the home at the time the informant made the buy. The majority opinion also indicates there was no evidence to support the officers belief that there was a probability that evidence was being destroyed inside the house.

The evidence recited in the majority opinion clearly shows that there in fact was evidence to be weighed by the trial court concerning these elements in the case. Contrary to the record, the majority holds that there is a total lack of evidence to support the trial court. We have reiterated over and over that we will not reweigh the evidence in this Court. If there is evidence to support the decision of the trial court it will not be disturbed, such is the case at bar. *Miller v. State* (1991), Ind., 563 N.E.2d 578.

This case clearly comes within the exception to the requirement of a warrant where exigent circumstances are involved. This rule of law is clearly recognized in the majority opinion but then totally ignored. The entry without a warrant clearly was justified in this case. Therefore, it would be unnecessary to reach the second portion of the majority opinion wherein it is held that the warrant which was later issued was issued without probable cause. However, here again, I would respectfully dissent from the majority opinion. Even if one would accept for the sake of argument that the entry was illegal, the court issuing the warrant still had an abundance of probable cause based upon the buy by the informant to issue the warrant.

I cannot agree with the strained rationalization of the majority opinion to reach the conclusion that the warrant was improperly issued. Here again, is a finding of fact by the trial judge which should not be disturbed.

The trial court and the Court of Appeals should be affirmed.