# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Sep 24 2019, 10:09 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Russell W. Brown, Jr.
King Brown & Murdaugh, LLC
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin E. Clark, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 24, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-283 <br><br> Appeal from the Porter Superior Court <br><br> The Honorable Roger V. Bradford, Judge <br><br> Trial Court Cause No. <br> 64D01-1410-F5-8782 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Kevin E. Clark, Jr. (Clark), appeals his conviction for maintaining a common nuisance, a Level 6 felony, Ind. Code § 35-48-4-13(b)(2).

We affirm.

# ISSUES

Clark presents two issues for our review, which we restate as follows:

(1) Whether the trial court abused its discretion by admitting into evidence the marijuana found in a package and in Clark's basketball shorts; and

(2) Whether the trial court properly instructed the jury.

# FACTS AND PROCEDURAL HISTORY

On the morning of September 30, 2014, United States Postal Inspector, Steven Sadowitz (Sadowitz), contacted the Porter County Drug Task Force regarding a suspicious package that was received at the mail processing and distribution center in Gary, Indiana. His suspicion was aroused due to the package's weight of approximately nineteen pounds, its shipment address in San Francisco, and its delivery address in Northwest Indiana. Sadowitz transported the package to the Portage Police Department where a canine conducted an open-air sniff and alerted on the package.

Deciding to make a controlled delivery of the package in conjunction with the Drug Task Force, Sadowitz obtained a carrier uniform and vehicle. When he

arrived at the address listed on the package, a man, later identified as Clark, opened the door of the residence. Sadowitz announced that he had a package for Eric Morris, to which Clark replied, "That's me." (Transcript Vol. II, p. 138). While Clark signed the delivery slip for the package, Sadowitz smelled "quite an odor of marijuana" coming from the open door to the house. (Tr. Vol. II, p. 138). After Clark signed for the package, officers, who had been conducting surveillance, approached the residence.

[6] Porter County Sheriff's Detective James Gaskill (Detective Gaskill) "immediately smelled marijuana." (Tr. Vol. II, p. 164). Detective Gaskill secured the residence with a protective sweep, placed Clark in handcuffs, and advised him of his *Miranda* rights. During the protective sweep, Detective Gaskill located a mason jar with marijuana and burnt roaches in the master bedroom. Detective Gaskill inquired about the strong odor of marijuana and Clark admitted that he had "just smoked a joint." (Tr. Vol. II, p. 177). When Clark denied being Eric Morris, Detective Gaskill asked to see his identification. After Clark advised that his identification was in the pocket of his basketball shorts, Portage Police Officer Joshua Dobson (Officer Dobson) retrieved his shorts. Reaching in the inside pocket of the shorts, the officer found marijuana, cash, and Clark's identification. Detective Gaskill sought a search warrant for the house and the package. Once the search warrant for the package was obtained and the package was opened, the officers located 10.6 pounds of marijuana inside.

On October 6, 2014, the State filed an Information, charging Clark with Count I, dealing in marijuana, a Level 5 felony; and Count II, maintaining a common nuisance, a Level 6 felony. On June 1, 2015, Clark filed a motion to suppress the evidence discovered as a result of the protective sweep and the search warrant. On September 26, 2016, the trial court conducted a hearing on Clark's motion. Following the hearing, the trial court issued an order granting the motion to suppress with regard "to anything that was taken inside the residence pursuant to the search warrant that was issued." (Appellant's App. Vol. II, p. 44). The trial court denied the motion "as to the contents of the package that was kept outside the residence during the entire proceeding." (Appellant's App. Vol. II, p. 44). Clark sought an interlocutory appeal of the trial court's order, which this court declined to accept.

On September 18 through 19, 2018, the trial court conducted a jury trial. After Officer Dobson testified that the package had been brought inside the residence, Clark renewed his motion to suppress based upon the trial court's previous order suppressing the evidence of anything that was taken inside the residence. The trial court denied the renewed motion, explaining that it was "poor wording" on the court's part and that its "intention was that anything dealing with that package that was delivered was not suppressed, regardless of where it ended up." (Tr. Vol. II, p. 162). At the close of the evidence, the jury returned a guilty verdict on the Level 6 felony maintaining a common nuisance and found Clark not guilty of the Level 5 felony dealing in marijuana. On January

7, 2019, during the sentencing hearing, the trial court imposed a sentence of one year, suspended entirely to probation.

[9] Clark now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Admission of the Evidence*

[10] Clark contends that the trial court abused its discretion when it admitted the evidence found in the package and in Clark's basketball shorts. The general admission of evidence at trial is a matter we leave to the discretion of the trial court. *Nicholson v. State*, 963 N.E.2d 1096, 1099 (Ind. 2012). We review a trial court's determination for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.* However, where a trial court's ruling pertains to the constitutionality of a search or seizure, the trial court's decision is reviewed *de novo*. *Garcia v. State*, 47 N.E.3d 1196, 1199 (Ind. 2016).

### A. *Search of the Package*

[11] Relying on the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution,[1] Clark claims that the

---

[1] Although Clark cites to the relevant provisions of the Indiana Constitution and notes that the review is analytically distinct, he fails to develop this argument. Therefore, any claim under the Indiana Constitution is waived. *Holloway v. State*, 69 N.E.3d 924, 931 (Ind. Ct. App. 2017), *trans. denied*.

marijuana in the package was discovered pursuant to an illegal warrant. He maintains that because the illegally obtained evidence of the protective sweep was used to bolster the probable cause of the search warrant for the package, the package's search warrant is invalid.

[12] In general, the ordinary remedy for an unconstitutional search is exclusion of the evidence obtained "in a prosecution against the victim of the unlawful search . . . absent evidence of a recognized exception." *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013). The Fourth Amendment to the United States Constitution requires probable cause for the issuance of a search warrant. *Mehring v. State*, 884 N.E.2d 371, 376-77 (Ind. Ct. App. 2008), *trans. denied*.

> Probable cause is a fluid concept incapable of precise definition and is to be decided based on the facts of each case. In deciding whether to issue a search warrant, the issuing magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. The reviewing court's duty is to determine whether the issuing magistrate had a substantial basis for concluding that probable cause existed. A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the finding of probable cause. A reviewing court, for this purpose includes both the trial court ruling on a suppression motion and an appellate court reviewing that decision. . . . [W]e will not invalidate a warrant by interpreting probable cause affidavits in a hypertechnical, rather than a common[-]sense, manner.

*Id*. at 376-77 (quotation marks and citations omitted).

[13]     In support of his argument that the package was opened pursuant to an invalid search warrant, Clark refers this court to *Esquerdo v. State*, 640 N.E.2d 1023 (Ind. 1994). In *Esquerdo*, police officers forcibly entered a residence without a search warrant after the confidential informant, who had just conducted a controlled buy at the residence, informed them that Esquerdo was about to leave and could be destroying evidence. *Id*. at 1025. After securing the residence, the officers obtained a search warrant. *Id*. Our supreme court concluded that in issuing the search warrant, the issuing magistrate relied upon contraband observed during the illegal entry of the residence. *Id*. at 1030. As a result, the supreme court declared the search warrant to be invalid. *Id*. "To allow use of the bad evidence would give the police incentive to enter the residence, without a judicially-issued warrant, and search for evidence to bolster any evidence supporting probable cause that the police already possess. This is plainly what the constitutional protections against unreasonable searches restrict against." *Id.* at 1030.

[14]     Clark's reliance on *Esquerdo* is misplaced. It is a well-recognized legal premise that "where a search warrant is based on both legally obtained information and information obtained in contravention of the Fourth Amendment," this court "will determine the legitimacy of the warrant only in light of the legally obtained information." *Perez v. State*, 27 N.E.3d 1144, 1153 (Ind. Ct. App. 2015), *trans. denied*. If probable cause remains to support the warrant after the illegally obtained information is excised from the warrant application, the warrant is still valid and its fruits are admissible. *Id*. at 1153-54. Here, excising

from the probable cause affidavit the information obtained during the illegal protective sweep—a mason jar with marijuana and burnt roaches—the issuing magistrate still had sufficient information to "make a practical common-sense decision [that], given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place." *Mehring*, 884 N.E.2d at 377-78.

[15] The record reflects that, after Sadowitz became suspicious about the package, a drug detection dog alerted on the presence of controlled substances in the package. *See State v. Hobbs*, 933 N.E.2d 1281, 1286 (Ind. 2010) (a drug dog's alert to the presence of controlled substances is sufficient to establish probable cause). Additionally, the search warrant noted that when an officer spoke to Clark by the open door to the house, the officer smelled a strong odor of marijuana coming from inside the residence. *See Miller v. State*, 846 N.E.2d 1077, 1083 (Ind. Ct. App. 2006) (the strong and distinctive odor of marijuana coming from the defendant's vehicle provided probable cause to search the vehicle). Accordingly, we conclude that the trial court properly admitted evidence that was discovered pursuant to the search warrant for the package which was supported by probable cause due to the canine alert and the strong marijuana odor emanating from the residence. The information gained from the illegal protective sweep was not necessary to the finding of probable cause to open the package, and thus the warrant remained valid.

## B.  *Clark's Basketball Shorts*

[16] Next, Clark maintains that the trial court abused its discretion by admitting the evidence found in his basketball shorts which was obtained in violation of his *Pirtle* rights. After being placed in handcuffs and advised of his *Miranda* rights, he claims that he "was entitled to be advised of his right to an attorney prior to consenting to any search of his basketball shorts [by the officer] to obtain his identification[.]" (Appellant's Br. p. 16).

[17] Under Article 1, Section 11 of the Indiana Constitution, "a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent." *Pirtle v. State,* 323 N.E.2d 634, 640 (Ind. 1975). It is undisputed that Clark was not issued this advisement. Thus, whether the evidence must be suppressed turns on whether Clark was in custody at the time consent was requested. *See Meredith v. State*, 906 N.E.2d 867, 873 (Ind. 2009).

[18] However, the officers did not request permission to search Clark's shorts. When Clark was asked to confirm his identity, he informed the officers that his identification was in his shorts. When the officer retrieved the shorts that Clark referred to, he reached inside the pocket to verify Clark's identification; the officer was not searching for contraband. Our supreme court has noted that the word "search" connotes uncovering that which is hidden, prying into hidden places for that which is concealed, or an exploratory investigation or quest. *Alcorn v. State*, 265 N.E.2d 413, 416 (Ind. 1970). Here, there is no evidence of an exploratory quest; rather, the officer merely sought to procure Clark's identification from the location Clark indicated it could be located—his shorts.

Therefore, no *Pirtle* warning was required and the trial court properly admitted the evidence found in Clark's basketball shorts.

## II. *Jury Instruction*

[19] Lastly, Clark contends that the trial court abused its discretion in instructing the jury on the elements of the Level 6 felony maintaining a common nuisance. Specifically, he claims that the State charged him with "unlawfully keeping" controlled substances, while the trial court instructed the jury that they had to find that Clark "unlawfully used" a controlled substance. *See* I.C. § 35-48-4-13(b)(1) & (b)(2).

[20] As an initial matter, the State posits that Clark waived this argument. We agree. Indiana Appellate Rule 46(A)(8)(e) mandates that "[w]hen error is predicated on the giving or refusing of any instruction, the instruction shall be set out *verbatim* in the argument section of the brief with the *verbatim* objections, if any, made thereto." An appellant's failure to comply with Appellate Rule 46(A)(8)(e) results in waiver of the claimed error. *Lahr v. State*, 640 N.E.2d 756, 763 (Ind. Ct. App. 1994). Clark failed to include the tendered instruction in his Brief and has consequently waived any error.

[21] Waiver notwithstanding, Clark did not carry his burden of proof in establishing that the trial court abused its discretion by instructing the jury. The tendered instruction stated,

> The crime of maintaining a common nuisance is defined by law
> as follows:

> A person who knowingly or intentionally maintains a building, structure, or other place that is used for the purpose of unlawfully using, keeping, or delivering a controlled substance commits maintaining a common nuisance, a Level 6 felony.
> To convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
> 1. The Defendant;
> 2. Knowingly or intentionally;
> 3. Maintained a building, structure, or other place;
> 4. That was used for the purpose of unlawfully using, keeping, or delivering a controlled substance.
> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Maintaining a Common Nuisance, a Level 6 felony.

(Appellant's App. Vol. II, p. 103).

[22] Clark does not contend that the jury instruction was an inaccurate statement of the law; rather Clark alleges, without referring to any supporting caselaw, that the trial court should not have included the word 'using' in the instruction because the charging Information and probable cause affidavit only referred to 'keeping' a controlled substance.

[23] At the time when Clark committed the crime in 2014, maintaining a common nuisance was defined in subsection (b) as:

> A person who knowingly or intentionally maintains a building, structure, vehicle, or other place that is used one (1) or more times:
> (1) By persons to unlawfully use controlled substances; or
> (2) For unlawfully
>     (A) Manufacturing;
>     (B) Keeping;
>     (C) Offering for sale;
>     (D) Selling;

(E) Delivering; or
(F) Financing the delivery of;
controlled substances, or items of drug paraphernalia, as
described in [I.C. §] 35-48-4-8-5; commits maintaining a
common nuisance, a Level 6 felony.

Accordingly, pursuant to the statute applicable in 2014, a person can be convicted of maintaining a common nuisance as a Level 6 felony by maintaining a building that is used by persons using controlled substances *or* for unlawfully keeping controlled substances.

[24] The jury heard evidence and arguments from both parties that focused on the 'keeping' element of the charge. Clark now fails to explain how he could have been harmed by the trial court's inclusion of the language from the statute regarding 'using' a controlled substance in addition to also referring to 'keeping' a controlled substance. As noted by the State, a person cannot use what he does not keep. In order for a person to use a controlled substance, the person must first have or keep the controlled substance. Thus, to the extent that the jury found that Clark's home was used to receive and consume the controlled substance, the jury would also have necessarily found that he had been using the home to keep the controlled substances. Accordingly, we conclude that the trial court properly instructed the jury on the charge.

# CONCLUSION

[25] Based on the foregoing, we conclude that the trial court did not abuse its discretion in admitting the marijuana found in the package and in Clark's basketball shorts; and the trial court properly instructed the jury.

Affirmed.

Vaidik, C. J. and Bradford, J. concur